**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Winston Tyler Hencely,<br><br>      Plaintiff,<br><br>    v.<br><br>Fluor Corporation, Inc.; Fluor Enterprises, Inc.; Fluor Intercontinental, Inc.; Fluor Government Group International, Inc.,<br><br>      Defendants. | C/A No.: 6:19-cv-00489-BHH<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

Defendants Fluor Corporation, Fluor Enterprises, Inc., Fluor Intercontinental, Inc., and Fluor Government Group International, Inc. (collectively, "Defendants" or "Fluor") file this Reply to Plaintiff Winston Tyler Hencely's ("Plaintiff") Response in Opposition to Defendants' Motion for Judgment on the Pleadings ("Response"). (ECF No. 65).

### INTRODUCTION

Plaintiff asks this Court to deviate from the long-standing application of the Door Closing Statute. But, the Door Closing Statute's "application has been too consistently affirmed by the State of South Carolina and this federal circuit for [a district court] to make some independent pronouncement about it." *Boisvert v. Techtronic Indus. N. Am., Inc.*, 56 F. Supp. 3d 750, 753 n.1 (D.S.C. 2014).

### TIMELINE

The following is a timeline of critical facts and procedurally significant events pertinent to Defendants' Motion:

- November 12, 2016 – An Afghan Local National, who was purportedly an operative of the Taliban (*see* ECF No. 1 at ¶¶ 10, 26, and 27), executes a suicide bomb attack at Bagram Airfield in Afghanistan. Plaintiff suffers injuries.

1

- February 20, 2019 – Plaintiff files suit in South Carolina. (ECF No. 1).

- March 18, 2019 – Fluor files a motion to dismiss for lack of subject matter jurisdiction.[1] When this motion was filed, time bars in other available forums were already in place. Therefore, even if Fluor had filed a Rule 12(b)(6) motion raising the Door Closing Statute at this juncture, Plaintiff would have had the same problem in those forums that he is now facing. (ECF No. 10).

- June 1, 2020 – The Court denies Fluor's motion to dismiss and issues an Order finding it has subject matter jurisdiction. (ECF No. 52).

- June 15, 2020 – Fluor timely files its Answer. (ECF No. 54). Notably, Fluor's Answer established for the first time Defendants' respective states of incorporation. (*Id.* at ¶¶ 42, 47, 56, 63).

- June 19, 2020 – Fluor files this Motion. (ECF No. 57).

## ARGUMENT

Plaintiff's Response to Defendants' Motion goes far beyond the pleadings[2] in an attempt to distract this Court from correctly applying a well-established statute that has been, as this Court has recognized, consistently enforced by South Carolina's state and federal courts for well over a century.

### I. The Door Closing Statute Bars This Action Because Plaintiff's Claims Arise Out of a Suicide Bombing Attack in Afghanistan.

This is a ***tort*** action arising out of a suicide bombing attack by an Afghan Local National, who was purportedly an operative of the Taliban, at Bagram Airfield in Afghanistan. Plaintiff's

---

[1] Fluor properly raised that threshold issue at the outset of this action, as "***questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case***." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (citations and quotations omitted) (emphasis added); *see also U.S. v. Salmona*, 810 F.3d 806, 810 (11th Cir. 2016) ("Without subject matter jurisdiction, a court has no power to decide anything except that it lacks jurisdiction.").

[2] While Defendants have made every effort to stay within the pleadings, Defendants present two documents in Section VI below that are necessary to contextualize several of Plaintiff's misplaced arguments.

Complaint asserts five tort claims and one claim for breach of contract. Yet, Plaintiff would have this Court now believe that this entire case arises from the alleged breach of contract. This Court should reject Plaintiff's attempt to recast five tort claims as ancillary to a breach of contract claim for the sole purpose of avoiding the Door Closing Statute.

It is well-established that "the substantive law governing a tort action is determined by the state in which the injury occurred[.]" *Rogers v. Lee*, 777 S.E.2d 402, 405 (S.C. Ct. App. 2015). Because Plaintiff's injury occurred in Afghanistan, his five tort claims clearly did not arise in this State. Consequently, Plaintiff lacks capacity to sue here because of the Door Closing Statute. *See Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*, 463 F. Supp. 2d 544, 551 (D.S.C. 2006) ("[D]etermining whether the door-closing statute precludes *some* of the causes of action in this case depends on a fact-sensitive analysis.") (emphasis added).[3]

The Door Closing Statute likewise bars Plaintiff's breach of contract claim.[4] Plaintiff is correct that "[w]hen a contract is involved, the question for purposes of the door-closing statute is whether the contract was made or was to be performed in South Carolina." *Tuttle*, 463 F. Supp. 2d at 551. Plaintiff is incorrect, however, that the LOGCAP IV contract was formed in South Carolina. *See Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*, 402 S.E.2d 177, 179 (S.C. 1991) ("It is

---

[3] Defendants respectfully submit that under *Tuttle's* analysis, this Court is not required to take – as Plaintiff argues – an "all or nothing" approach with respect to the dismissal of Plaintiff's causes of action. Notwithstanding that, however, the analysis herein clearly demonstrates the appropriateness of dismissing Plaintiff's action in its entirety.

[4] Plaintiff's breach of contract claim is also barred because Plaintiff lacks standing to bring such a claim, as he is plainly not an intended beneficiary to Fluor's government contract. *See*, *e.g.*, *Chancellor Manor v. U.S.*, 331 F.3d 891, 901 (Fed. Cir. 2003) (noting "the reality that third-party beneficiary status is an 'exceptional privilege'" with respect to government contracts); *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 428-429 (4th Cir. 2000); Restatement (Second) Contracts § 313(2) cmt. a ("Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested").

well-settled that a contract is executed when the last act necessary for its formation is done and at the place where the final act is done.") (citations and quotations omitted); *see also Eagle Aviation, Inc. v. Galin*, 761 F. Supp. 405, 407 (D.S.C. 1989) (contract signed and accepted in Connecticut, thus entered into in Connecticut). Here, the "last act necessary" to make LOGCAP IV and each Task Order thereunder a binding contract took place when the Government *accepted* Fluor's bid and *awarded*[5] each contract from Rock Island, Illinois. (*See* ECF No. 1-11 ("U.S. Army *Awards* Fluor LOGCAP IV Task Order for Afghanistan") (emphasis added); *see also* ECF No. 1 at ¶¶ 78-79 ("In April 2008, *the DOD awarded* the fourth generation of support contracts, known as LOGCAP IV, to three contractors, including Fluor. *Fluor was awarded* contract number W52P1J-07-D-0008.") (emphasis added); *Id.* at ¶ 83 ("In July 2009, *Fluor was awarded* Task Order [0]005, a cost-plus-award-fee contract.") (emphasis added).

As to performance, the allegations contained in Plaintiff's Complaint make clear that the performance complained of occurred entirely in Afghanistan.[6] (*See* ECF No. 1 at ¶ 86 ("Task Order [0]005 encompassed services and base life support for the eastern and northern sections of the Islamic Republic of Afghanistan."); *see also id.* at ¶ 87 ("Task Order [0]005 included in Fluor's scope of work *the Non-Tactical Vehicle Yard where the bomber worked*.") (emphasis added); *Id.* at ¶ 88 ("As the prime contractor under the LOGCAP Materials, Fluor controlled and was responsible for *the Non-Tactical Vehicle Yard and the personnel working there*.") (emphasis added); *Id.* at ¶ 89 ("As the prime contractor with oversight of the Non-Tactical Vehicle Yard,

---

[5] AWARD, Black's Law Dictionary (11th ed. 2019) ("To grant by formal process . . . [*e.g.,*] "*the company awarded the contract to the low bidder*") (emphasis added).

[6] *See Boisvert*, 56 F. Supp. 3d at 753 n.1 (The Door Closing Statute "provides a forum for wrongs connected with the state while avoiding the resolution of wrongs in which the state has little interest"); *see also* Resp. at 4 (claims with a "tenuous" connection to South Carolina should be dismissed).

4

Fluor was responsible for the actions of its LOGCAP personnel ***at the Non-Tactical Vehicle Yard***.") (emphasis added); *Id.* at ¶ 110 ("Fluor did not reasonably supervise the bomber ***at the Non-Tactical Vehicle Yard*** because no Fluor supervisor actually supervised [him] ***at his worksite*** and because no Fluor supervisor was ever told by Fluor that he had a responsibility to supervise ***the HAZMAT work center***, where [the bomber] worked alone, constructing the bomb.") (emphasis added).

In addition, Plaintiff's reliance on *Murphy v. Owens-Corning Fiberglas Corp.* is misplaced. Although *Murphy* held that "[a] cause of action 'arises' when the act or omission that creates the right to bring suit happens or begins," that case was in the asbestos context and thus entirely distinguishable because it involved a latent injury. 550 S.E.2d 589, 594 (S.C. Ct. App. 2001), *aff'd,* 590 S.E.2d 479 (S.C. 2003). In *Murphy*, the plaintiff developed mesothelioma from household exposure to asbestos while living in South Carolina between 1966 and 1969. *Murphy*, 550 S.E.2d at 591 (S.C. Ct. App. 2001). However, the plaintiff was not actually diagnosed with mesothelioma until 1982 in Virginia. *Id.* at 592. Although the plaintiff's injury was diagnosed more than a decade after she left South Carolina, the court held that her right to bring the action arose in South Carolina because her exposure to asbestos occurred while she was living in South Carolina (*i.e.*, the exposure between 1966 and 1969 was when the "act" that created the right to bring that suit "began"). *Id.* at 594. This bears absolutely no relation to Plaintiff's unprecedented breach of contract theory.

Plaintiff now argues that Fluor caused, from its offices in South Carolina and in violation of its contractual obligations, an Afghan Local National to build and detonate a suicide bomb in Afghanistan. This Court should summarily reject Plaintiff's portrayal of these events, apply a clear and well-established statute, and dismiss this action in its entirety.

5

## II.     The Only Applicable Countervailing Federal Interest in a Door Closing Statute Analysis Supports the Dismissal of This Action.

"It is well established that a South Carolina federal court exercising diversity jurisdiction *must* apply § 15-5-150 unless there are affirmative countervailing federal considerations." *Boisvert*, 56 F. Supp. 3d at 752 (citations and quotations omitted) (emphasis added). There is only *one* applicable countervailing federal interest for this Court to consider in its Door Closing Statute analysis,[7] and that countervailing federal interest clearly supports dismissal.

In an attempt to sidestep the only applicable countervailing federal interest at issue, Plaintiff misleadingly states that "Fluor correctly points out that . . . courts have *tended* to focus their analysis of countervailing federal interests *primarily* on whether the plaintiff could have brought his suit in another forum *and gained 'full relief.'*" (Resp. at 13 (emphasis added)). Fluor did no such thing. Plaintiff cherry-picked this "full relief" language, which is irrelevant, from a single opinion quoted in Defendants' memorandum of law in support of this Motion. (*See* ECF No. 57-1 at 5 (quoting *Bumgarder v. Keene Corp.*, 593 F.2d 572, 573 (4th Cir. 1979)). The only applicable countervailing federal interest is whether an alternative forum *was available* for Plaintiff to assert his claims. *Boisvert*, 56 F. Supp. 3d at 752 ("*Szantay* has been almost completely limited, by the Fourth Circuit Court of Appeals, to circumstances in which the plaintiff does not have an alternative forum in which to assert his claims.").[8] Here, Plaintiff had several alternative

---

[7] In his Response, Plaintiff has listed what Plaintiff characterizes as "other" or "important" countervailing federal interests. (Resp. at 17-18). Because all of these are totally irrelevant to a Door Closing Statute analysis, Defendants will not devote part of their 15-page limit to addressing them. *See* Local Civ. R. 7.05(B)(2).

[8] Defendants incorporate by reference the remaining relevant case law in support of this argument as found on pages 4 and 5 of their memorandum in support. (ECF No. 57-1 at 4-5). In addition, Plaintiff's "full relief" language only appears in the conclusory sentence of the *Bumgarder* opinion, which was a mere two paragraphs long. *Bumgarder*, 593 F.2d at 573. It is otherwise

6

forums in which to assert his claims, including Georgia (his home state) and Texas (where a related action brought by numerous plaintiffs injured by the same suicide bombing attack is pending). *See Loquasto et al. v. Fluor Corporation, Inc. et al.*, C/A No. 3:19-cv-01455-B.

Second, it is telling that Plaintiff did not ask whether Fluor would consent to a transfer to Texas. Texas would certainly be a more convenient forum for all parties and witnesses except for Plaintiff, as Fluor has a presence in Texas and all other similarly situated plaintiffs are currently litigating in Texas. However, one must assume Plaintiff wishes to avoid litigating in Texas at all costs because Texas law allows for apportionment of fault to non-parties who are immune from suit (*i.e.*, the military), while South Carolina does not. (Resp. at 14).

### III.  Fluor Has Not Waived the Ability to Raise the Door Closing Statute.

Plaintiff's waiver argument is entirely meritless. In lieu of addressing all of the foreign and unreported authority cited by Plaintiff, Defendants simply direct the Court to the controlling law and rule on this issue.

In South Carolina, "[w]aiver is a voluntary and intentional abandonment or relinquishment of a known right." *Singh v. Singh*, 837 S.E.2d 651, 661 (S.C. Ct. App. 2019), *reh'g denied* (Feb. 13, 2020) (citing *Parker v. Parker*, 443 S.E.2d 388, 391 (S.C. 1994)). Plaintiff has cited to no South Carolina case, because he cannot, that holds that a defendant waived the right to raise lack of capacity to sue at the Rule 12 stage. Indeed, it has been established for more than 100 years that a lack of capacity defense is timely raised in South Carolina when raised in an answer. *See Chet Adams Co. v. James F. Pedersen Co.*, 413 S.E.2d 827, 829 (S.C. 1992) ("Where lack of capacity to sue is not ***timely raised*** by demurrer ***or answer***, it is waived.") (emphasis added); *see also H &*

---

entirely irrelevant to a Door Closing Statute analysis, as all post-*Bumgarder* cases have only required the availability of an alternative forum.

*H Glass Co. v. Wynne*, 346 S.E.2d 523, 524 (S.C. 1986) (holding same); *Dalton v. Town Council of Mt. Pleasant*, 129 S.E.2d 523, 526 (S.C. 1963) (holding same); *Bramlett v. Young*, 93 S.E.2d 873, 881 (S.C. 1956) (holding same); *Kirton v. Howard*, 134 S.E. 859, 869 (S.C. 1926) (collecting cases and holding same); Fed. R. Civ. P. 9(a)(2) ("To raise [the issue of a party's capacity to sue], ***a party must do so by a specific denial***, which must state any supporting facts that are peculiarly within the party's knowledge.") (emphasis added); *United Supreme Council v. United Supreme Council of the Ancient Accepted Scottish Rite*, 792 F. App'x 249, 255 (4th Cir. 2019) ("The lack of capacity to sue is an affirmative defense that must be raised in an answer[.]").[9]

Here, 14 days after the Court issued its Order denying Defendants' motion to dismiss, Defendants timely raised the Door Closing Statute in their Answer. (ECF No. 54). Again, it was not until Defendants filed their Answer that their respective states of incorporation were established. (*Id.* at ¶¶ 42, 47, 56, 63). Four days later, Defendants filed this Motion in compliance with Local Civil Rule 7.03 (D.S.C.), which states that "[a]ttorneys are expected to file motions immediately after the issues raised thereby are ***ripe for adjudication***."[10] (emphasis added).

Plaintiff has cited to no authority in support of his position that Defendants were somehow required to file a second Rule 12 motion ***while the Court was still considering Defendants' Rule***

---

[9] *See also QZO, Inc. v. Moyer*, 594 S.E.2d 541, 546 (S.C. Ct. App. 2004) (holding that the defendant waived his right to raise a Door Closing Statute argument when it was raised for the first time on appeal, and thus it was not preserved for appellate review); *Chet Adams Co.*, 413 S.E.2d 827, 829 (finding waiver where the defendant raised a lack of capacity to sue for the first time in its reply brief on appeal).

[10] This issue was not "ripe for adjudication" for the purposes of this Motion until Defendants filed their Answer and the pleadings were "closed." Fed. R. Civ. P. 12(c). Moreover, Plaintiff's after-the-fact assertion that he would have stipulated to Defendants' states of incorporation (*see* Resp. at 19), is questionable at best, especially when considering the fact that Plaintiff has vigorously opposed every significant issue Defendants have raised.

***12(b)(1) motion***. Instead, Plaintiff attempts to poison the well, highlighting that ***Fluor*** waited 476 days to raise this issue. (Resp. at 20). Not so. Defendants simply waited for the Court to rule on whether it had subject matter jurisdiction, and when it ruled that it did, Defendants timely filed their Answer and this Motion.

Based on the foregoing, Defendants respectfully submit that Plaintiff's waiver argument, if accepted, would lead to an absurd result contrary to all controlling authority. For that reason, the Court should reject it.

### IV.     The Door Closing Statute Continues to Apply in Federal Court Post-*Farmer*.[11]

At the outset of his final argument, Plaintiff states, "Defendants' ***presumption*** that the door closing statute applies in federal court is wrong." (Resp. at 22) (emphasis added). That statement is indeed puzzling, as the Door Closing Statute's continued applicability in federal court post-*Farmer* is grounded in well-established case law. Shortly after *Farmer* was decided, a court in this district addressed this very issue:

> Plaintiff asserts the South Carolina Supreme Court's statement that the door-closing statute "clearly does not apply to federal suits" is controlling in this case. It has been long held that federal courts sitting in diversity must apply [the Door Closing Statute] unless countervailing federal interests preclude its application. . . . The issue after *Farmer* is whether the South Carolina Supreme Court's reinterpretation of [the Door Closing Statute] as not affecting subject-matter jurisdiction changes its application in federal court. ***Despite that court's statement to the contrary, the statute continues to apply in diversity suits***. In *Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S. Ct. 1235, 93 L. Ed. 1524 (1949), the United States Supreme Court addressed whether the *Erie* doctrine mandated application of a door-closing statute aimed at unregistered foreign corporations, which was similar to [another door closing statute], in the federal courts. The Supreme Court, in concluding that the statute applies in federal court, stated that "a right which local law creates but which it does not supply with a remedy is not right at all for purposes of enforcement in a federal court in a diversity case; that where in such cases one is barred from recovery in the state, he should likewise be barred in the federal court." . . . To allow the suit to proceed in the federal courts when it could not in the state courts "would create discriminations against citizens of the State in favor of those who

---

[11] *See Farmer v. Monsanto Corp.*, 579 S.E.2d 325 (S.C. 2003).

> can invoke the diversity jurisdiction of the federal courts. It was that element of discrimination that *Erie R. Co. v. Tompkins* was designed to eliminate." . . . The primary concern in *Woods* was therefore not whether the statute affected subject-matter jurisdiction, but whether the statute prevented a party's recovery in the state courts.

*Tuttle*, 463 F. Supp. 2d at 549 (quoting *Woods,* 337 U.S. at 538, 69 S. Ct. 1235) (emphasis added).

Shortly thereafter, the *Tuttle* court went on to hold the following:

> The Fourth Circuit's decision in *Szantay v. Beech Aircraft Corp.,* 349 F.2d 60 (4th Cir. 1965) also requires the federal courts' continued application of the door-closing statute. After reviewing the Supreme Court's *Erie*-line of cases, including *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S. Ct. 893, 2 L. Ed. 2d 953 (1958) and *Hanna v. Plumer,* 380 U.S. 460, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965),[12] the Fourth Circuit provided three guidelines for applying *Erie:*
>
> 1. If the state provision, whether legislatively adopted or judicially declared, is the substantive right or obligation at issue, it is constitutionally controlling.
>
> 2. If the state provision is a procedure intimately bound up with the state right or obligation, it is likewise constitutionally controlling.
>
> 3. If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity.
> . . .
> ***Szantay addressed the same issue presented here***: whether [the Door Closing Statute] applies in the federal courts.
> . . .
> *Szantay* and subsequent cases conducted their analyses on the assumption that the door-closing statute is jurisdictional. . . . However, the South Carolina Supreme Court's reinterpretation of the statute as not affecting jurisdiction does not alter *Szantay*'*s* application in this case. *Erie* is not concerned with whether the state law is jurisdictional, but rather whether the state law is substantive or procedural—and even that distinction usually turns [on] how the statute operates in practice and not on strict definitions. . . . ***The door-closing statute operates the same today as when the Fourth Circuit considered the issue over forty years ago, despite the South Carolina Supreme Court's reinterpretation. Thus, absent countervailing federal***

---

[12] Plaintiff seems to think that the *Tuttle* court did not consider *Hanna*. (*See* Resp. at 23 ("The [*Tuttle*] court did not consider whether the rule announced in *Hanna* governed.")). Based on the above, it is clear that the *Tuttle* court was fully aware of the *Hanna* decision when it issued its well-reasoned opinion.

> *interests, a federal court sitting in diversity must continue to apply [the Door Closing Statute].*

*Tuttle*, 463 F. Supp. 2d at 549–51 (citing *Szantay*, 349 F.2d at 63-64) (emphasis added). This well-reasoned analysis has not been disturbed, and federal courts sitting in diversity continue to apply the Door Closing Statute.

### V.   Miscellaneous Assertions Made in Plaintiff's Response.

In addition to the analysis above, Defendants address several miscellaneous assertions made in Plaintiff's Response:

- "Fluor represented to this Court on March 18, 2019, '[d]efendants agree that this case is pending in the appropriate division. . . . Then on May 20, 2019, Fluor represented that its only defenses were 'subject matter jurisdiction' and the Military's alleged 'negligence.'" (Resp. at 1). Fluor agreeing that venue was proper here does not mean that the Door Closing Statute is inapplicable. *See* 28 U.S.C. § 1391(b)-(c). Indeed, venue and capacity to sue are two entirely distinct principles, so while South Carolina may be an appropriate venue based on Fluor's residency, Plaintiff may still separately lack the capacity to sue in this State. As to Fluor's May 20, 2019 filing, Fluor clearly stated, "At this time, Defendants are not obligated to answer Plaintiff's complaint and assert affirmative defenses." (ECF No. 34 at 10). Nothing in that filing limited Fluor's ability to timely raise additional defenses in its Answer.

- Plaintiff continues to allege that the bomber was Fluor's employee. (Resp. at 2, 4, 9, 11). This allegation is demonstrably false and entirely irrelevant to the issue before the Court. (*See* ECF No. 54 at ¶¶ 93-94).

- Fluor's first Rule 12 motion "caused a delay beyond what Fluor believes was the expiration of the statute of limitations." (Resp. at 3). This is absolutely not correct. At the time Fluor

11

filed its Rule 12(b)(1) motion, the statutes of limitation had *already expired* in Georgia, Texas, Delaware, and California.

- "Despite Fluor's statements to the contrary, South Carolina is the best state for [Plaintiff's] case and may be the only state where his claims could proceed." (Resp. at 6). Whether South Carolina is currently the only state where Plaintiff's claims could proceed is entirely irrelevant to a Door Closing Statute analysis. The only relevant consideration is whether an alternative forum was available for Plaintiff to assert his claims. Alternative forums were available in at least four other states.

- "Those interests include . . . facilitating judicial economy in the federal court system . . ." (Resp. at 7). If any party to this action has caused the expenditure of unnecessary judicial resources, it is Plaintiff. All similarly situated plaintiffs are proceeding together in *Loquasto*, yet Plaintiff sought out this forum on his own, presumably due to South Carolina's favorable law regarding the apportionment of fault to non-parties who are immune from suit.

- "The presence of [Plaintiff's breach of contract] claim alone is effectively fatal to the entirety of Fluor's arguments under the door closing statute, and Fluor's conspicuous failure to address that claim should be dispositive of the present motion as a result." (Resp. at 10). This assertion by Plaintiff has absolutely no support in the law. No court has held that the Door Closing Statute is inapplicable simply because a plaintiff also asserts a breach of contract claim.

- "Fluor asserts with little support that Plaintiff could have filed his claims in Georgia, Delaware, Texas, or California." (Resp. at 13). One or more Fluor entities has been a party to legal actions in all of these states, particularly with respect to Georgia, Texas, and

California. Indeed, Plaintiff had several alternative forums available in which to assert his claims despite the law only requiring that he have one.

- "Applying the door closing statute would erase almost two years of litigation. It would force [Plaintiff] to re-file his claims in a different state before another federal or state court, where his ability to obtain 'full relief' would be disputed by Fluor itself." (Resp. at 17-18). There is no requirement that Plaintiff be able to obtain "full relief" in another forum, and Fluor did not force Plaintiff to file his claims in South Carolina. That was a decision Plaintiff made in the face of the Door Closing Statute.

- Plaintiff's citation to *Pressman v. Estate of Steinworth*, 860 F. Supp. 171, 176 (S.D.N.Y. 1994) is unpersuasive. (*See* Resp. at 19). As discussed in detail above, raising a lack of capacity defense in an answer is timely under South Carolina law.

- *N.A.A.C.P. Labor Comm. of Front Royal, Va. v. Laborers' Int'l Union of N. Am.*, 902 F. Supp. 688, 699 (W.D. Va. 1993) is easily distinguishable. (Resp. at 20). Unlike Fluor, the defendants in that case failed to raise the issue regarding the plaintiff's capacity to sue by specific negative averment in their answers.

- *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 710 (D.S.C. 2017) is likewise easily distinguishable. (Resp. at 21). That case dealt with a judgment debtor's wife who was served with a subpoena, then waited nearly a month to assert that the subpoena was improperly served. Here, this issue was "ripe for adjudication" under Local Civil Rule 7.03 (D.S.C.) after Fluor filed its Answer. Fluor filed the instant Motion four days later.

## VI. Evidence Outside the Pleadings.

As stated above, Plaintiff's Response goes far beyond the pleadings. While this Court need not consider anything outside the pleadings (including the information in this Section) in order to

rule in Fluor's favor, Fluor is nonetheless compelled to bring two documents to the Court's attention. They should be considered only if the Court converts this Motion into a motion for summary judgment.

1. Department of the Army Notice of Award for Afghanistan North AOR, attached as ***Exhibit A*** ("Fluor Intercontinental is determined to offer the Best Value to the Government for Afghanistan North AOR. ***The Government hereby awards*** Task Order 0005 under contract W52P1J-07-D-0008 for the Afghanistan North AOR to your company. ***The Government accepts*** Fluor's proposed prices . . . ***Your company is to begin performance under this task order immediately***.") (emphasis added). This clearly establishes that the "last act necessary"[13] to make Task Order 0005[14] a binding contract was when the Government *accepted* Fluor's bid and *awarded* Fluor the contract from Rock Island, Illinois. *See Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("The party alleging a contract must show a mutual intent to contract including an offer, an acceptance, and consideration.").[15]

2. October 31, 2018 Tolling Agreement, attached as ***Exhibit B***.[16] Plaintiff's Tolling Agreement expired on February 28, 2019. This clearly establishes that when Plaintiff filed suit on February 20, 2019, he still had the ability to file in any other available forum that has a two-year

---

[13] *See Jet Time, Inc.*, 402 S.E.2d at 179.

[14] This is the exact task order that Plaintiff alleges Fluor breached in his Complaint. (*See* ECF No. 1 at ¶¶ 79, 83).

[15] (1) Offer (Notice of Award is responding to an offer from Fluor); (2) Acceptance (Notice of Award clearly indicates acceptance of Fluor's offer); and (3) Consideration (Notice of Award confirms a task order value of $769,963,174 to be "incrementally funded in the amount of $75 Million"). Accordingly, this contract was formed in Rock Island, Illinois on July 7, 2009.

[16] Fluor is using and disclosing this Tolling agreement merely "as evidence of this Tolling Agreement." (*See **Ex. B*** at ¶ 19).

statute of limitations. Furthermore, it also clearly establishes that Fluor's Rule 12(b)(1) motion to dismiss was filed *after* the Tolling Agreement had expired.

## CONCLUSION

In 2014, this Court correctly applied the Door Closing Statute in *Boisvert*. The Door Closing Statute should likewise be applied here. Therefore, based on the foregoing, Defendants respectfully request that the Court grant their Motion and dismiss this action in its entirety.[17]

Defendants also respectfully request oral argument on this Motion. A separate motion for hearing will be filed with the Court.

*[SIGNATURE PAGE FOLLOWS]*

---

[17] In light of Plaintiff's argument that the statute of limitations had not even started to run when he filed this action (*see* Resp. at 3, 16), the Court should not hesitate to dismiss this action and allow him to attempt to refile it in another forum. However, in all candor, if the Court has reservations about dismissing this action, the Court could transfer it. *See, e.g., Informaxion Sols., Inc. v. Vantus Grp.*, 2015 WL 7184562, at *3 (D.S.C. Nov. 10, 2015); *see also Ocwen Loan Serving, LLC v. Foodman, Hunter, & Karres, PLLC*, 2013 WL 6668097, at *5, *8 (D.S.C. Dec. 18, 2013); *Grimsley v. United Engineers & Constructors, Inc.*, 818 F. Supp. 147, 148-49 (D.S.C. 1993). If the Court were to transfer this action, which Defendants maintain it should not, Defendants respectfully submit that the appropriate forum would be the Northern District of Texas, which is where the related *Loquasto* case is pending.

15

Respectfully submitted,

NEXSEN PRUET, LLC

s/William W. Wilkins
William W. Wilkins, Fed. ID No. 4662
Andrew A. Mathias, Fed. ID No. 10166
Konstantine P. Diamaduros, Fed. ID No. 12368
55 E. Camperdown Way, Suite 400 (29601)
Post Office Box 10648
Greenville, South Carolina 29603-0648
Telephone: 864.370.2211
Facsimile: 864.282.1177
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

HARTLINE BARGER LLP

Darrell L. Barger (*admitted pro hac vice*)
1980 Post Oak Blvd.
Suite 1800
Houston, Texas 77056
Telephone: 713.759.1990
Facsimile: 713.652.2419
dbarger@hartlinebarger.com

J. Reid Simpson (*admitted pro hac vice*)
800 N. Shoreline Blvd.
Suite 2000, North Tower
Corpus Christi, Texas 78401
Telephone: 361.866.8000
Facsimile: 361.866.8039
rsimpson@hartlinebarger.com

*Attorneys for Defendants Fluor Corporation, Inc., Fluor Enterprises, Inc., Fluor Intercontinental, Inc., and Fluor Government Group International, Inc.*

July 9, 2020
Greenville, South Carolina

16