IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA GREENVILLE
DIVISION

|  |  |  |
|---|---|---|
| WINSTON TYLER HENCELY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:19-CV-00489-BHH |
| | ) | |
| v. | ) | |
| | ) | |
| FLUOR CORPORATION, | ) | |
| FLUOR ENTERPRISES, INC., | ) | |
| FLUOR INTERCONTINENTAL, INC., | ) | |
| FLUOR GOVERNMENT GROUP | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiff's Response in Opposition to Fluor's Motion for Judgment on the Pleadings,
Doc. 101[1]**

## I.      Introduction

Fluor assumed duties specifically to protect American soldiers knowing that a failure to perform those duties would likely cause death or mayhem to innocent victims *and also knowing* that some information about such failures might be classified by the Army and therefore unavailable to Fluor or the victims.  Fluor now argues the latter absolves it of all liability.  The argument is just as preposterous as it sounds.

Fluor's most recent in its seemingly never-ending string of new, imagined reasons for the dismissal of this case is just as meritless as Fluor's previous attempts to avoid liability.[2]  Fluor asks

---

[1] On December 16, Fluor filed two so-called "motions for judgment on the pleadings," one addressing the state secrets privilege and one addressing Fluor's twice-rejected contention that Plaintiff is not an intended third-party beneficiary of Fluor's contracts with the Army.  Docs. 101 and 102.  This brief responds to the former.
[2] As argued briefly below and in Plaintiff's Motion to Strike, Doc. 105, the Court should deny Fluor's successive Rule 12 motions because they are abusive and procedurally improper.

this Court for extraordinary relief that no other court in the country has ever granted. Fluor says that Mr. Hencely, a decorated veteran nearly killed by Fluor's bomber, should recover nothing for his debilitating injuries because the Army *might* assert the state secrets privilege over some evidence that *might* support Fluor's contention that the Army was the sole cause of Fluor's bomber's actions. Fluor cites no cases and Plaintiff has located none dismissing a case because the state secrets privilege might protect some evidence associated with the claims when:

-- the United States has not expressly invoked the state secrets privilege;[3]

-- there already is a substantial amount of admissible evidence related to the contentions of the defendant in the record; and

-- the party purportedly seeking the materials that might be protected from disclosure has done nothing to obtain those materials other than to send two letters.

Thus, Flour does not tell this Court that it would be an outlier if it dismissed the Plaintiff's case based on Fluor's most recent filing.

Despite seeking a complete dismissal of Plaintiff's case, Fluor has done almost nothing to obtain the information it now suddenly claims is crucial. Fluor claims it sent a *Touhy* letter to the government at some unspecified time last year[4] seeking the unredacted Army Report; Fluor

---

[3] *See Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1043, n. 24 (9th Cir. 2020) (reversing Order dismissing case and ruling "we have not found—and the Agent Defendants have not cited— any case other than the one at hand in which a court granted dismissal under the privilege as to non-Government defendants, notwithstanding the Government's assertion that the claims at issue may be litigated with nonprivileged information").

[4] Fluor says that it requested information from the Army pursuant to a *Touhy* request sometime in the fall of 2020, Doc. 101-1 at 12, but it has continuously refused to produce the actual request it sent to the Army. Plaintiff asked Fluor to provide its communications with the Army after Fluor referenced those communications in its response to Plaintiff's motion in limine. Doc. 92. At 3. Fluor refused to provide its communications for Plaintiff's review. *See* Doc. 95 at 4, n. 7; Doc. 95-7. Now Fluor has referenced its communications *again* in its motion for judgment on the pleadings, but it failed to attach the actual request, instead choosing to attach only the Army's response. Fluor has not explained why it refuses to provide a copy of its so-called supposedly "formal request" to the Army.

attached to its motion a FOIA request that one of its lawyers sent seeking the same thing. That is all Fluor has done.

Fluor has not sought to enforce its *Touhy* letter or even question the government's decision not to release some unidentified classified information in response to Fluor's FOIA request. Fluor has not sought security clearances for its lawyers,[5] even though it admits that the Army allowed some of Fluor's lawyers with clearances to view a less redacted version of the Army Report in a prior proceeding. Doc. 101-1 at 7-8, n.7. Fluor has not served Rule 34 document requests or subpoenas on the Army. Since Fluor has done nothing to obtain any documents other than sending two letters, it has not moved to compel the Army to produce any documents, despite doing that very thing in *Norat*. *Norat v. Fluor*, Case No. 6:16-cv-00603-BHH, Doc. 33 ("Consent Motion to Compel Department of the Army"). Fluor also has not asked the Court to Order the Army to produce the classified documents for *in camera* review or for use in this case with proper protections in place. *See* Doc. 95 at 3, n. 6 (describing procedures for private parties to obtain and use classified materials in a civil case).

There's an obvious reason for Fluor's lassitude: it does not actually want the materials it merely claims to want, and it does not believe those materials would be helpful to Fluor. Fluor does not really want a full copy of the Army Report and its attachments. Instead, Fluor wants merely to use the fact the Army has, quite unsurprisingly, "classified" some documents, the contents of which are unknown to Fluor, as yet another excuse to seek dismissal of Mr. Hencely's claims and thus save Fluor money. That is just as outrageous as it sounds.

---

[5] Doc. 105-1, Aug. 26, 2020 M&C Tr. at 35/22 – 36/5. ("Mr. Snyder: Is Fluor working this process to get clearances for its lawyers too? Mr. Mathias: I'm not in the process of that, and I don't know if others are. Mr. Snyder: Are any of the Texas folks doing that, do you know? Mr. Mathias: If they are, I'm unaware of it, and I would probably know.").

Fluor knows that no amount of other information from the Army will change the facts that (a) Fluor allowed the employee for which Fluor is responsible to build a bomb at Fluor's worksite using Fluor's materials and tools while Fluor was supposed to be, but was not, supervising him; and (b) Fluor allowed him to remain on base despite the fact Fluor was obligated to remove him, which enabled the bomber to walk several miles from his work station with a bomb strapped to his chest and then to detonate that bomb, which *could not* have happened had Fluor fulfilled its duty to escort him off the base.  No amount of additional information, classified or otherwise, can change or obscure those facts – facts which Fluor cannot honestly deny, and facts which discovery would prove Fluor has to admit, were discovery to occur in this case, which it won't because Fluor cannot risk that happening.

Fluor's entire motion also rests on two flawed premises.

*First*, Fluor contends that the Army's actions are a "pivotal issue" in the case.  Doc. 101-1 at 7.  That contention totally depends upon Fluor's attempt to fundamentally rewrite Plaintiff's claims – which this Court has already ruled Fluor may not do.  *See, e.g., Order* of June 1, 2020, Doc. 52 at 16, 27.[6]  This case is not about the Army's actions before or after the bombing.  As this Court properly concluded in its June 1 Order:

> Plaintiff's allegations relate to Fluor's conduct *after* Nayeb was admitted to BAF on any particular day (e.g., failing to designate any of three available Fluor supervisors to actually supervise Nayeb; checking out unnecessary and suspicious tools from Fluor's tool room to Nayeb though his work at the NTV Yard required no tools and though he offered no legitimate justification; allowing Nayeb to acquire most of the components and projectiles necessary for the construction of the suicide vest from his worksite and granting him the freedom of movement to complete its construction while at the Base; failing to ensure that Fluor employees

---

[6] 16 ("Defendants' assertion that Plaintiff's complaint challenges force protection measures at BAF depends upon a not-so-subtle re-writing of the complaint. In fact, Defendants' motion barely mentions the actual substance of Plaintiff's causes of action except as a jumping off point from which to assert that the "true" nature of those claims is to challenge BAF force protection measures"); 27 (describing Fluor's arguments "as an effort to rewrite the complaint in order to pose nonjusticiable questions that would require dismissal."

> complied with escort policies that were universally applicable at BAF, etc.) and
> *after* his work performance warranted disciplinary action or termination (e.g.,
> failing to implement discipline and retaining Nayeb, even promoting him to a
> higher pay grade, after he was caught sleeping at his worksite during working hours
> and with the knowledge that he was often inexplicably absent from his worksite
> without permission).

*Id.* (emphasis in original).  Plaintiff's actual allegations are that, *regardless of any conduct by the Army,* Fluor's failings caused the bombing and Mr. Hencely's injuries.  Fluor knows everything it needs to know about what Fluor and those employees for which it was responsible did or failed to do.  Fluor did its own internal investigation and has access to all of its own documents, employees, and subcontractors who have any knowledge of Fluor's conduct.  The Army's actions are not 'pivotal' to Plaintiff's claims.

Fluor's arguments wholly ignore the indisputable truth that *the Army faulted Fluor.*  It is highly unlikely that anything helpful to Fluor would be found in whatever the Army has classified. Certainly Fluor does not know, and therefore does not claim, that whatever the Army has classified somehow helps to exculpate Fluor or mitigate its seemingly clear liability.  If in fact the Army found something in its investigation helpful to Fluor, Fluor could have found the same thing from its own investigation.  The foregoing are the obvious reasons Fluor has merely gone through some motions pretending to want some unidentified thing the Army has classified – without Fluor knowing what it is – all just to set up this most recent Rule 12 motion.   There are no impediments to Fluor defending itself in this case, other than a complete lack of any defense.

*Second,* Fluor asserts that "this case cannot be fairly litigated or tried without risking damage to the national security of the United States by exposing classified information."  Doc. 101-11 at 19.  Fluor doesn't know that.  Fluor is just speculating.  More importantly, Fluor does

not decide what is in the national security interests of the United States or what may be classified

or protected by any government privilege.[7]  The United States makes those decisions.

Contrary to Fluor's contention that litigating this case will "damage the national security

of the United States," the United States has already concluded that it is appropriate to publicly

release a great deal of information about the Fluor bomber and the Army's investigation, *see* Doc.

1-1 (redacted Army Report),  to provide witnesses to testify in the related *Loquasto* proceeding

about the same bombing, Doc. 101-1 at 23 (describing testimony of Lieut. Gen (Ret.) Bednarek),

and to consider the release of further information through a "mandatory declassification review"

that Fluor admits is not complete.  Doc. 101-4 at 2 (describing Army's declassification review).

Given the Army's conduct to date, there is no evidence the Army will ever invoke the state secrets

privilege and that as a result Fluor will be denied access to material Fluor knows nothing about

and has failed to really attempt to get.

But even if the Army were to assert the state secrets privilege over some portion of the

Army report and its attachments, *and* this Court then accepted such an assertion,[8] *and* that would

deprive Fluor of access some materials, the case ***still*** would not be subject to dismissal.  Fluor

relies on a line of cases in its motion where some courts have dismissed claims brought against the

---

[7] "The [state secrets] privilege belongs to the Government and must be asserted by it; ***it can neither
be claimed nor waived by a private party***."  *United States v. Reynolds*, 345 U.S. 1, 7, 73 S. Ct.
528, 532, 97 L. Ed. 727 (1953) (emphasis added).

[8] The government does not invoke the privilege lightly. It invokes the state secrets privilege only
after "several levels of review" and "only to the extent necessary to protect against the risk of
significant harm to national security."  *Roule v. Petraeus*, No. C 10-04632 LB, 2012 WL 2367873,
at *3 (N.D. Cal. June 21, 2012).  Supporting the privilege also is no easy task.  "First, the state
secrets privilege must be asserted by the United States.  It belongs to the Government and ... can
neither be claimed nor waived by a private party.  Second, there must be a ***formal claim of
privilege***, lodged by the head of the department which has control over the matter. Third, the
department head's formal privilege claim may be made only after actual personal consideration by
that officer."  *El-Masri v. United States*, 479 F.3d 296, 304 (4th Cir. 2007), quoting and citing
*Reynolds*, 345 U.S. at 7 (quotation marks omitted and emphasis added).

United States or an employee of the United States because (1) the United States had asserted the state secrets privilege; *and* (2) the court considered and accepted the assertion; *and* (3) the excluded materials were deemed central to the issues in the case making it impossible for the case to proceed.[9]  The very idea that some supposed "state secrets" could change the facts in this truly simple case is implausible, to say the least. Again, the evidence is clear and Fluor cannot honestly deny that (a) Fluor allowed the employee for which Fluor is responsible to build a bomb at Fluor's worksite using Fluor's materials and tools while Fluor was supposed to be, but was not, supervising him, and (b) then allowed him to remain on base despite the fact Fluor was obligated to remove him, which enabled the bomber to walk several miles from his work station with a bomb strapped to his chest and then to detonate that bomb, which *could not* have happened had Fluor fulfilled its duty to escort him off the base.

In its motion Fluor did not tell this Court that the courts that have dismissed cases based on an assertion of the state secrets privilege have held that such a dismissal is a "drastic result and should not be readily granted." *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1041 (9th Cir. 2020).  Indeed, "only when no amount of effort and care on the part of the court and the parties will safeguard privileged material is dismissal warranted." *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1244 (4th Cir. 1985).  Dismissal is only appropriate when the withheld information would support a valid defense warranting judgment for the defendant ***and*** allowing the case "to be tried without that information would likely cause the factfinder to reach an erroneous result."

---

[9] *See, e.g.*, *El-Masri v. United States*, 479 F.3d 296, 301 (4th Cir. 2007) (after U.S. intervened in lawsuit against CIA director and others, CIA director submitted sworn declarations claiming state secrets privilege, and court found that plaintiff's claim that he was subject to extraordinary rendition and torture could not proceed because plaintiff could not prove his case against specific defendants and defendants could not defend the case without relying only on evidence protected by the state secrets privilege); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 269 (4th Cir. 1980) (dismissal of contractual claim against naval employee was proper where Secretary of Navy had properly invoked state secrets privilege over the subject matter of ***all*** contracts at issue).

*S.E.C. v. Nacchio*, 614 F. Supp. 2d 1164, 1168 (D. Colo. 2009); *In re Sealed Case*, 494 F.3d 139, 149 (D.C. Cir. 2007) (same).

Fluor does not even argue that it meets such standards, because it cannot.

The ordinary rule, which Fluor ignores, is that "[o]nce successfully invoked, the effect of the [invocation of the state secrets] privilege is completely to remove the evidence from the case. When the government is not a party, '[t]he result is simply that the evidence is unavailable, as though a witness had died, and the case will proceed accordingly, with no consequences save those resulting from the loss of the evidence.'" *In re U.S.*, 872 F.2d 472, 476 (D.C. Cir. 1989), quoting *Ellsberg v. Mitchell,* 709 F.2d 51, 65 (D.C. Cir. 1983) (footnote omitted) (citations and quotations omitted); *see also Reynolds*, 345 U.S. at 11 (affirming government's ability to withhold accident report but remanding case for further litigation without evidence protected by the privilege).

That is precisely what should happen here. **If** the government were to assert the state secrets privilege over some portion of the Army report or its attachments (and it has not), and **if** the Court were to hold that assertion was proper, **then** whatever evidence that might be subject to the privilege will be unavailable to **all** parties, and "the case will proceed accordingly, with no consequences save those resulting from the loss of the evidence." *In re U.S.*, 872 F.2d at 476.

That unavailability, **if** it should come to pass, will not leave Fluor unable to litigate this case. Fluor already has admissible evidence in its possession that it can use to attempt to argue that the Army is the sole proximate cause of the bombing. It lists all of that information on page 23 of its brief. Doc. 101-1 at 23. Fluor also can argue, as it has done extensively and repeatedly in its pleadings to date, that its contracts did not really require Fluor to stop the bomber from building a bomb at Fluor's worksite and did not really require what the contracts specify – that

Fluor was obligated to get the bomber off the base. Doc. 10 at 24-41. Fluor also can argue, as it has done, that the training of Fluor's escorts was the Army's responsibility and thus the failure by Fluor to have Fluor's escorts get the bomber off the base and thus prevent him from walking miles from his work station to the place where he blew up himself and innocent servicemen and servicewomen was all the Army's fault. *Id.* That is why we have juries – to sift through such arguments. The Court should not dismiss this case simply because Fluor now argues, without any evidence that there **migh**t be more information that exists somewhere that **might** be of some unspecified use to Fluor.

Fluor's motion is yet another attempt to distract this Court, the Plaintiff, and the Plaintiff's counsel from the work that needs to be done to get this case to trial. Fluor knows that soon it will be held to task for not participating in discovery and that it may face sanctions for its failure to do what is required of litigants in federal court. Fluor also knows that the longer it can delay these proceedings the longer it can delay the judgment that it faces. The Court should not allow Fluor to continually try to derail this case. Because Fluor could never meet the standard for dismissal based on invocation of the state secrets privilege even **if** the Army were to invoke the privilege, Fluor's motion should be denied on the merits with prejudice, now.

But at an absolute minimum, Fluor's motion is exceedingly premature and should be denied for that reason alone. The Court cannot possibly know now whether the Army will invoke the state secrets privilege and, if so, over what materials. The Court also cannot know now whether it will agree with the Army that some portion of the Army report and its attachments might properly be subject to the state secrets privilege. With none of that information, Fluor's motion must be denied and the case should continue through discovery.

As to Fluor's **third** request for a discovery stay, that request is just as transparent as it seems. There is no basis to stay this case based on the possibility that the Army **may** invoke a privilege at some unknown later date. *See, e.g.*, *Roule*, 2012 WL 2367873, at *3 (describing extensive process U.S. government undertakes in asserting state secrets privilege and denying request for stay where government had not yet decided whether to invoke state secrets privilege). There also is no reason for the Court to direct the Army to state whether it will assert a privilege in the future. If Fluor wants to know whether the Army will release more information or instead assert a privilege, it should serve a discovery request on the Army and let the process proceed as the Federal Rules contemplate. Fluor has not done so because the Army has expressly declined to invoke the state secrets privilege in response to Fluor's half-hearted attempts to obtain the information.

## II.    <u>Argument</u>

Fluor has called its third Rule 12 motion a "motion for judgment on the pleadings" under Rule 12(c). As this Court ruled in its Order denying Fluor's first "motion for judgment on pleadings," judgment on the pleadings is only appropriate where "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Doc. 78 at 2, quoting *Fowler v. State Farm Mut. Auto. Ins. Co.*, 300 F. Supp. 3d 751, 755-756 (D.S.C. 2017). Judgment on the pleadings may only be granted where "'it appears **certain** that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014), emphasis added and quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). Simply stating the standard for judgment on the pleadings shows that Fluor's motion must be denied.

### a.  **Fluor's Motion Should be Denied as an Improper Successive Rule 12 Motion**

On December 21, 2020, Plaintiff filed his Motion to Strike Fluor's Improper Third and Fourth Rule 12 Motions.  Doc. 105.  As Plaintiff argued in that motion, Fluor's third and fourth Rule 12 motions are procedurally improper for two reasons relevant to this motion.[10]

*First*, Fluor has already filed and lost two Rule 12 motions.  Courts have denied successive Rule 12 "motions for judgment on the pleadings" because "permitting a party to file piecemeal successive Rule 12(c) motions would violate Rule 1[11] and invite abusive tactics designed to cause delay and increase the cost of litigation."  *See CRST Expedited, Inc. v. TransAm Trucking, Inc.,* No. C16-52-LTS, 2018 WL 2016273, at \*4–5 (N.D. Iowa Mar. 30, 2018); *Fisher v. Dallas Cty.,* 3:12-CV-3604-D, 2014 WL 4797006, at \*9 (N.D. Tex. Sept. 26, 2014) (federal rules are not meant to allow a party to "file ad nauseam successive Rule 12(c) motions").

*Second,* Fluor's motions violate the Local Rules.  Local Rule 7.05 sets a page limit of 35 pages for memoranda "unless an exception is granted by the Court."  With *each* of its *third and fourth* Rule 12 motions Fluor filed a separate and long "Memorandum of Law in Support."  That briefing far exceeds the Local Rules 35 page limit.[12]

---

[10] In that Motion, Plaintiff also argued that Fluor had twice raised and lost its argument related to Plaintiff's contract claim.  *See* Doc. 105 at 6-7.

[11] The Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  "In interpreting and enforcing the provisions of the Rules of Civil Procedure, the District Courts are given wide discretion and latitude to the end that the desired results of speedy and efficient administration of justice may be secured."  *Saxton v. W. S. Askew Co.*, 38 F. Supp. 323, 325 (N.D. Ga. 1941).

[12] Fluor's Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleading is **32 pages**, excluding the exhibits attached thereto.  Doc. 101-1.  Fluor's Memorandum of Law in Support of Defendants' Motion for Partial Judgment on the Pleadings Regarding Plaintiff's Breach-of-Contract Claims is **23 pages**, excluding the attached exhibits.  Doc. 102-1.  In addition, Fluor's first "motion for judgment on the pleadings totaled **7 pages**, excluding the exhibits attached thereto.  Doc. 57-1.  In total, by filing three separate "motions for judgment on the pleadings" Fluor has filed memoranda that nearly double the applicable page limits, without seeking any exception from the Court.

If the Court is not inclined to strike Fluor's improper successive Rule 12 motions, the Court also would be well within its discretion to simply deny the motions for the same reasons discussed above and argued in Plaintiff's motion to strike. *E.g., CRST Expedited, Inc.*, 2018 WL 2016273, at \*4–5 (denying successive Rule 12 motion). Fluor has already twice made Rule 12 arguments that Plaintiff's case should be dismissed. The Court properly denied both motions. If Fluor believes that it has any other arguments that Plaintiff's claim fail, it should make those arguments in its sure-to-be-filed summary judgment motion.

### b. **Fluor's Motion Should be Denied Because the United States Has Not Asserted the State Secrets Privilege**

Fluor's motion hinges on a singular premise – Fluor asserts that the Army will "shut down discovery" into evidence that the Army has marked as classified and as a result this case should be dismissed. Doc. 101-1 at 23. But the Army has not "shut down discovery" into any evidence. Fluor has served no discovery on the Army and, other than sending two letters, it has never attempted to obtain the information that Fluor pretends it wants.

Rather than asserting any privileges, the Army stated in response to Fluor's *Touhy* letter that it would embark on a "mandatory declassification review" of the Army Report and its attachments under Army regulations. Doc. 101-4. During the declassification review, "[i]nformation will be reviewed on a line-by-line basis and declassified if it no longer meets the standards for classification." Army Reg. 380-5, § 3-10(c)(1). The Army must release the results of the declassification review within one year of the request. *Id.* (c)(4). If the review results in the information remaining classified, Fluor may file an appeal with the agency. *Id.* §3-11. Thus, despite Fluor's contention that the Army "will shut down discovery" and assert privileges to avoid release of the information, the Army has already done *the exact opposite* – it agreed to a systematic "line by line" review of the Army report and its attachments to determine whether it will release

some or all of that material to Fluor. Fluor has no idea what the result of that review will be. Nor does the Court.

While the Army conducts that declassification review, Fluor also is not without other remedies. As Fluor admits in its motion, the army allowed some of Fluor's lawyers to view a less redacted version of the Army report in a prior proceeding. Doc. 101-1 at 7-8, n.7. Presumably, Fluor would have told the Court if it had asked for a similar accommodation in this case. Since it did not so state and it has admitted it is not trying to obtain clearances for its lawyers in this case,[13] the Court can presume Fluor has made no such request.

In addition, and as detailed in Plaintiff's reply in support of his Motion *In Limine*, Fluor could ask the Court to direct the Army to provide the Court with the unredacted Army Report and its attachments for review. *See* Doc. 95 at 3, n. 6. The Court has a statutory clearance and may view classified materials. 28 C.F.R. § 17.46(c).[14] Fluor has not asked the Court to direct the Army to provide the Army report and its attachments to the Court for an obvious reason: Fluor does not want the Court to see those materials that Fluor now has claimed are so important to its defense of this case. Why not? Because Fluor surely knows that the Court seeing the materials would be fatal to Fluor's third Rule 12 motion.

Fluor has made its election – to file this its third Rule 12 motion rather than actually trying to get materials from the Army, or trying to get whatever it is the Army has classified to this Court for *in camera* review. Fluor's third Rule 12 motion is baseless and should be denied.

---

[13] *Supra* note 5.

[14] "[T]he Government may provide a court with classified information." *Washington v. Trump*, 847 F.3d 1151, 1168 n.8 (9th Cir. 2017); *see also De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 104 (D.D.C. 2012) ("The Court believes that it has the discretion to order disclosure of classified information to the Court in a civil case where the information is material to the resolution of disputed legal issues and where alternatives to reliance upon classified information are inadequate to satisfy the interests of justice."); *see also* 28 C.F.R. § 17.17(c) (describing procedures for dissemination of classified materials in civil litigation).

The Court can only grant Fluor's motion for judgment on the pleadings if it concludes that "it appears *certain* that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Drager,* 741 F.3d at 474 (quotation marks omitted and emphasis added).   In the context of this motion, that would require the Court to conclude *now* based on the pleadings that the Army will assert the state secrets privilege, that the Court will sustain the privilege as properly invoked, and that the Court will conclude the case cannot proceed without the materials the Army has classified.  *See El-Masri*, 479 F.3d at 304 (describing three step analysis for dismissal under state secrets doctrine).  The first two have not happened; no basis can be imagined for the Court to reach the conclusion this case cannot proceed even if the first two did happen.   Obviously this Court cannot reach that conclusion *now* when the Army has asserted no privileges *and* has stated that it will try to declassify the materials Fluor now claims to want *and* Fluor has not even come close to exhausting its remedies to seek the information.  Given those facts, and the standard on a motion for judgment on the pleadings, Fluor's motion should be denied; it is, in fact, frivolous and abusive.  *See Hepting v. AT & T Corp.,* 439 F. Supp. 2d 974, 994 (N.D. Cal. 2006) (denying motion to dismiss based on state secrets doctrine at the pleadings stage because no discovery had been conducted and court could not assess the effect of any state secrets materials).

Fluor claims that the United States' assertion of the state secrets privilege is not a "prerequisite" for the Court's dismissal of this case.  Doc. 101-1 at 18, n. 14.  But Fluor admits that every Fourth Circuit case it relies on involved dismissal only *after* the government had asserted the state secrets privilege and the court had accepted the government's assertion as proper. *Id.*  In every other case cited in Fluor's brief, save the two discussed below, dismissal was granted only after the government had expressly asserted the state secrets privilege, the court had sustained

the privilege as properly invoked, and the court had concluded the case could not proceed without the privileged materials.

Fluor cites two cases in an attempt to support its claim that the government need not assert the state secrets doctrine for this Court to conclude that dismissal is appropriate. Neither supports Fluor's argument. Fluor first cites *Tenet v. Doe*, 544 U.S. 1, 8, 125 S. Ct. 1230, 1236, 161 L. Ed. 2d 82 (2005). *Tenet* is no help to Fluor because that case was dismissed based on the Supreme Court's holding in *Totten v. United States*, 92 U.S. 105, 105 (1875) which categorically bars all suits against the government based on a contract to perform *espionage*. There's no "espionage" element to this case. The plaintiff in *Tenet* was a former covert operative for the United States who claimed he had been harmed when the CIA stopped making certain payments to him. The Supreme Court applied the *Totten* rule to bar the plaintiff's claims because "requiring the Government to invoke the privilege on a case-by-case basis risks the perception that it is either confirming or denying relationships with individual plaintiffs." *Tenet v. Doe*, 544 U.S. 1, 11, 125 S. Ct. 1230, 1238, 161 L. Ed. 2d 82 (2005). Since this case has nothing to do with a covert relationship, *Tenet* does not support Fluor's argument.

Nor does *Weinberger v. Catholic Action of Hawaii/Peace Educ. Project*, 454 U.S. 139, 146 (1981), the other case Fluor cites. The question in *Weinberger* was whether the government had to create an environmental impact statement ("EIS") about the potential storage of nuclear weapons at a new facility. The Supreme Court held that the Ninth Circuit erred in directing the government to create a hypothetical EIS assuming, but not admitting, that the facility would store nuclear weapons. The Supreme Court held that neither the National Environmental Protection Act nor FOIA required the government to create a document that they otherwise would not have to

create. *Id.* at 145.  The case had nothing to do with the assertion of the state secrets privilege; and this case has nothing to do with the National Environmental Protection Act or FOIA.

Neither *Weinberger nor Tenet* have anything to do with this case or Fluor's arguments for dismissal.

### c. Even if the United States Does Assert A Privilege At a Later Date, Dismissal is Not Appropriate – Now or Then

The United States has not asserted the state secrets privilege over any evidence and has committed to attempting to declassify the materials Fluor now claims it wants.  But even if the Army invokes the state secrets privilege, the case still would not be subject to dismissal.

As noted above, dismissal based on the assertion of the state secrets privilege is a "drastic result and should not be readily granted." *Fazaga*, 965 F.3d at 1041.  The ordinary rule when the government properly asserts the state secrets doctrine is that "the evidence is unavailable, as though a witness had died, and the case will proceed accordingly, with no consequences save those resulting from the loss of the evidence.'" *In re U.S.*, 872 F.2d at 476, quoting *Ellsberg*, 709 F.2d at 65 (citations and quotations omitted).  Courts have only enforced the "drastic result" of dismissal when the information protected from disclosure is "so central to the litigation that any attempt to proceed will threaten that information's disclosure." *El-Masri*, 479 F.3d at 308.  That could never be the case here.

*El Masri* is a good example – in that case the plaintiff claimed he was subject to extraordinary rendition (kidnapping) by the CIA then tortured while in custody.  The court ruled that the CIA's refusal to release ***any*** information about the rendition program based on the state secrets privilege was proper.  As a result, the plaintiff could not make out a prima facie case and the United States could offer no defense of its actions without disclosing detailed facts about a program that the government could not even describe without jeopardizing national security

16

interests.  *Id.*  Because the state secrets information were the "very subject matter" of the case, the case was subject to dismissal.  *Id.*  Despite granting dismissal, the Fourth Circuit noted in *El Masri* that "[i]f a proceeding involving state secrets can be fairly litigated without resort to the privileged information, it may continue."  *Id.* at 306.

Plaintiff does not need access to any classified information to make out his case.  Plaintiff's complaint is based on the redacted Army Report and, as Plaintiff argued in his motion *in limine*, that report is admissible into evidence.  Doc. 87.  Plaintiff needs no further information from the Army to make out a *prima facie* against Fluor.

Nor does the "very subject matter" of this case revolve around state secrets materials or jeopardize national security.  Plaintiff's claims are against Fluor for its failure to supervise Nayeb and to escort him off the base.  Those claims hinge on Fluor's contractual obligations with the Army, its failure to perform those obligations, and the results of those failures.  *None of that information is subject to any privilege.*  The contracts governing Fluor's relationship with the Army are public, Fluor has possession of the documents regarding Nayeb's employment by Fluor, and Fluor's lack of supervision and the resulting bombing are all extensively detailed in the unclassified, redacted Army Report.  When the case can be fairly litigated without jeopardizing any national security interest, it is not subject to dismissal.  *E.g., El Masri at 306; Hepting*, 439 F. Supp. 2d at 994 (noting that subject matter of the case – NSA surveillance through telecom providers – was "hardly a secret" because of extensive government disclosures); *Doe v. Tenet*, 99 F. Supp. 2d 1284, 1290 (W.D. Wash. 2000) ("Certainly that portion of plaintiffs' case that is premised on the CIA's procedures for reviewing complaints and appeals does not represent a national security secret. Moreover, with respect to the facts of plaintiffs' case, Defendants have reviewed and approved for public filing all papers filed by plaintiffs thus far. If the CIA does not

object to public airing of the allegations already filed in this case, the Court is confident that the case may be litigated without requiring the disclosure of national security secrets.").

Finally, Fluor's argument that it cannot defend this case without access to state secrets material is manifestly not correct. Fluor has no idea what may or may not be present in the classified portions of the Army report and whether that evidence would support any of Fluor's arguments. But to warrant dismissal based on a parties' inability to defend a case, "the defense affected by the claim of privilege must be more than merely colorable; it must be 'valid' in the sense that the privileged materials, if revealed, would show that judgment for the defendant was appropriate, and that allowing the case to be tried without that information would likely cause the factfinder to reach an erroneous result." *Nacchio*, 614 F. Supp. 2d at 1168; *In re Sealed Case*, 494 F.3d 139, 149 (D.C. Cir. 2007) (same).[15] That could never be the case here.

Fluor nevertheless contends that if the Army invokes the state secrets privilege over some portions of the Army report or its attachments, Fluor will be unable to argue two things: (1) that Fluor is subject to the "government contractor" defense; and (2) that the Army is the sole proximate cause of Mr. Hencely's actions. Neither of Fluor's alleged defenses are "valid;" Fluor can argue the first and the available evidence proves the second is nonsense; and the loss of whatever

---

[15] Fluor may argue in reply that the Fourth Circuit has adopted a more lenient standard and it need only identify a hypothetical defense that would be affected by the state secrets privilege. Other courts have rejected that very argument. *See In re Sealed Case*, 494 F.3d at 149 (discussing *El Masri* and noting "to the extent the Fourth Circuit recently referred to "hypothetical defenses" based on privileged information in *El–Masri,* 479 F.3d at 309, its reference was made in the context of determining whether the "state secrets are so central to [the] proceeding that it cannot be litigated without threatening their disclosure," *id.* at 308, as relevant, the court reasoned that any valid defense to El–Masri's allegations of illegal detention and torture would require resort to privileged materials, *id.* at 308"). This Court should too. But even under a more lenient standard, Fluor would still lose this argument. *See Nacchio*, 614 F. Supp. 2d at 1168, n. 3 (noting that if a more lenient standard applied, case was still not subject to dismissal unless information protected prevented a "meaningful" defense).

materials that ***might*** be protected by a privilege the government has declined to invoke will not

"likely cause the factfinder to reach an erroneous result."

Citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 501 (1988), Fluor now says it wants

some unspecified information to make its "government contractor" defense.  Doc. 101-1 at 5.

Fluor's description of that so-called 'defense,' proves that Fluor could never validly assert it.  Fluor

states that:

> The government contractor defense shields contractors from liability under state tort law,
> when the contractor proves that (1) the government provided reasonably precise
> specifications governing the conduct; (2) the contractor's performance conformed to those
> specifications; and (3) the military's actual knowledge of the risks at issue was equal to or
> greater than that of the contractor.

*Id.*    *Boyle* was a product liability suit that dealt with the sale of defective equipment to the

government.  *Boyle*, 487 U.S. at 501 ("state law which imposes liability for ***design defects*** in

military equipment is displaced where ….") (emphasis added).  The cases relying on *Boyle* largely

limit its application to product liability cases in which a manufacturer sold products to the

government.  *E.g.*, *White v. Raytheon Co.*, No. CIV.A. 07-10222-RGS, 2008 WL 5273290, at *4

(D. Mass. Dec. 17, 2008) ("The government contractor defense shields ***manufacturers of products***

***made for the United States government from state tort liability for flaws in product design*** when

it is determined that a "significant conflict" exists between the federal interest and state law.")

(emphasis added).  Thus, it is not clear that the government contractor defense would ever be

available to Fluor in this case where the allegations have nothing to do with the sale of allegedly

defective products.

But even if Fluor could try to make a government contractor defense argument, any attempt

to do so would be frivolous.  The Army itself has already concluded that Fluor's performance of

its supervision and escort duties violated its contractual obligations.  Army Report, Doc 1-1 at 9-

15 (describing Fluor's failure to reasonably supervise Nayeb and to escort him off the base pursuant to its contractual obligations).  The Army has reiterated that finding multiple times.  November 28, 2017 Show Cause Notice, Doc. 95-8 at 2 ("Fluor has failed to perform in accordance with the terms and conditions of the contract.").  Thus, even if the "government contractor" defense applies to this non-product liability case, Fluor could *never* show that its performance complied with its contractual obligations.  *Boyle*, 487 U.S. at 501.  As a result, Fluor's invocation of the government contractor defense is not "valid" and presentation of the case without evidence that might be shielded by the state secrets privilege would not "likely cause the factfinder to reach an erroneous result."  *Nacchio*, 614 F. Supp. 2d at 1168.

The same is true of Fluor's contention that it wants access to classified information to argue that the Army was the sole proximate cause of the bombing that killed five innocent Americans and nearly killed Mr. Hencely, along with dozens more.  For Fluor to prevail on that defense, it would have to convince the jury that the Army, and not Fluor, was the sole proximate cause of the bombing.  That is impossible to do.  As noted above and as this Court previously ruled, this case is not about the Army's actions in allowing Nayeb to access the base.  It is about Fluor's failure to watch its employee while he was building a bomb at work.  It is about Fluor's failure to catch Nayeb storing a suicide vest at his work station over several months.  It is about Fluor's failure to stop Nayeb from checking out and using tools that he had no reason to use.  It is about Fluor's failure to terminate Nayeb when he violated work place rules.  And it is about Fluor's failure to escort Nayeb off of the base on the morning of November 12, 2016.  Those are all *Fluor failures.*  Without those failures, the bombing never would have happened – no matter what the Army did or did not do.  Thus, this Court could easily conclude that Fluor's proximate cause arguments could never present a "valid" defense and dismissal is not warranted, even if some evidence might

hypothetically be shielded by the state secrets privilege and therefore unavailable for use in this case.

But the Court need not go that far.  The Court need only conclude that the factfinder will not "reach an erroneous result" if some evidence is shielded by the state secrets privilege.  That is an easy call.  Fluor already has a significant amount of admissible evidence that it can use to argue its proximate cause defense.  *See* Doc. 101-1 at 23 (describing alleged Army failures).  That evidence is in the ***redacted*** Army Report and its attachments.  Plaintiff has already moved to admit the Army Report into evidence.  Doc. 87.  If the Court grants that motion, as Plaintiff respectfully submits it should, then the entire report is admissible, including the portions Fluor contends show failings by the Army.  Given that evidence, plus whatever testimony and additional documents Fluor has obtained from its own extensive investigation or has obtained since then (but not produced in discovery), there is no risk that the factfinder "likely will reach an erroneous result."

The facts here are similar to two cases already cited above – *United States v. Reynolds* and *S.E.C v. Nacchio*.  In *Reynolds*, the United States Supreme Court agreed that a government report about an airplane crash was completely protected by the state secrets privilege.  Even where the government report was completely protected by a properly asserted state secrets privilege, the Court did not dismiss the case.  Instead, the court remanded the case for further proceedings without the use of the report, noting that other evidence about the crash (primarily testimony) was available to the plaintiff.  Similarly, in *S.E.C. v. Nacchio*, the United States District Court for the District of Colorado refused to dismiss a securities fraud action after the government asserted the state secrets privilege about some materials related to the case.  *S.E.C. v. Nacchio*, 614 F. Supp. 2d at 1170.  The court reasoned that even without the excluded materials, the defendants would still be able to argue a lack of materiality to their statements.  *Id.*  Looking at the evidence available

to the defendants and the arguments that could be made from there, the court concluded dismissal was not proper. *Id.* Like the plaintiffs in *Reynolds* and the defendants in *S.E.C. v. Nacchio,* Fluor can make arguments that the Army is the sole cause of the bombing and it can cite to evidence already in the record to do so. There is no risk the factfinder will reach an erroneous result. Thus, dismissal is not warranted.

### d.  <u>Another Stay Would be Improper</u>

Fluor's motion also includes a third request that the Court stay the case. Fluor previously obtained a stay of discovery that delayed the case for over a year while the Court considered Fluor's first Rule 12 motion. Then, 22 days after the Court denied Fluor's first Rule 12 motion, Fluor filed its second motion to stay, asking the Court to stay the case so it could consider Fluor's second Rule 12 motion, making the belated argument that the case was supposedly barred by the South Carolina door closing statute. Doc. 58. The Court denied that motion to stay when it denied Fluor's second Rule 12 motion, Doc. 78. The Court also should deny Fluor's most recent request to stay discovery based on yet another successive Rule 12 motion making another belated argument.

Fluor's stated reason for a stay – so that the Court can direct the Army to consider and state whether it will assert the state secrets privilege – has been expressly rejected by the only other court that Plaintiff's counsel could locate that has considered the same issue. In *Roule*, the United States District Court for the Northern District of California rejected the U.S. government's request that the court stay the case while the government decided whether to assert the state secrets privilege in the case. *Roule*, 2012 WL 2367873 at *7. The DOJ asked the court to stay the case while it worked through its process to determine whether to assert the state secrets privilege. It did not offer any time frame for the review or provide evidence that litigating the case while the

DOJ considered the stay request would hurt national security interests. The court noted that the government invokes the state secrets privilege only after "several levels of review" and "only to the extent necessary to protect against the risk of significant harm to national security." *Id.* The government "will not defend an invocation of the privilege to conceal violations of the law, prevent embarrassment to any person, organization, or agency of the United States government, restrain competition, or prevent or delay the release of information that would not reasonably be expected to cause significant harm to national security." *Id.* In denying the DOJ's motion, the court noted that the balance of the equities warranted allowing the case to go forward and that "the Government fails to cite, and the court has not located, ***any cases*** where a federal court stayed proceedings to permit the Government more time to decide whether to invoke the states secrets privilege." *Id*. (emphasis added). Plaintiff's counsel also have found no such cases and Fluor cites none.

Fluor's request for a stay is one step removed from the request in *Roule* and thus even more improper. In *Roule*, the court denied a stay when the government was a party and had stated that it was considering asserting the privilege. Here, the government is not a party and has asserted no privileges or even stated it is considering asserting any privileges. Thus, there is even less of a reason for a stay here than there was in *Roule,* where the requested stay was denied. If Fluor wants to know if the Army intends to assert the state secrets privilege, it should serve discovery on the Army rather than continuing to rely on strained hypotheticals as a basis for its seemingly endless delay tactics. Nevertheless, for all the reasons explained above, the Army's consideration of whether to invoke a privilege is no reason to keep delaying this case. *Id.* There is much that can and should be done in the case regardless of the Army's hypothetical decision to invoke a privilege it has thus far declined to invoke. No stay is warranted.

### III.    <u>Conclusion</u>

Fluor's third Rule 12 motion is just as meritless as its first and second.  The Court would be well within its discretion to strike the motion or deny it as an improper successive Rule 12 motion that also violates the Local Rules.  If the Court wants to consider the merits of the motion, there are none.  Fluor has not come close to meeting the standard for dismissal based on the state secrets privilege and never will.  Plaintiff asks the Court to deny the motion so the parties and the Court can get back to the important work that Fluor is so desperate to avoid – getting this case moving forward to trial and judgment.

Respectfully submitted this 12th day of January 2021.

s/ *Beattie B. Ashmore*
BEATTIE B. ASHMORE, #5215
Beattie@BeattieAshmore.com
BEATTIE B. ASHMORE, P.A.
650 E. Washington Street
Greenville, S.C. 29601
T:  (864) 467-1001       F:  (864) 672-1406

JAMES E. BUTLER, JR.
Georgia Bar No. 099625
Jim@ButlerWooten.com
ROBERT H. SNYDER
Georgia Bar No. 404522
Rob@butlerwooten.com
BUTLER WOOTEN & PEAK LLP
2719 Buford Highway
Atlanta, GA 30324
T:  (404) 321-1800      F:  (404) 321-2962

W. ANDREW BOWEN, #10510
Andrew@BowenPainter.com
PAUL PAINTER, III
Georgia Bar No. 520965
BOWEN PAINTER, LLC
215 W. York Street
P.O. Box 8966 (31412)
Savannah, GA 31401
T:  (912)335-1909        F:  (912)335-3537

D. JOSEV BREWER #9188
Joe@JoeBrewerlaw.com
The Law Office of D. Josev Brewer
650 E. Washington Street
Greenville, SC 29601
T:  (864)383-5250

ATTORNEYS FOR PLAINTIFF