UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Winston Tyler Hencely, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> Fluor Corporation, Fluor Enterprises, Inc., ) <br> Fluor Intercontinental, Inc., Fluor ) <br> Government Group International, Inc., ) <br> ) <br> Defendants. ) <br> _____ | Civil Action No. 6:19-cv-00489-BHH <br><br> **OPINION AND ORDER** |

This matter is before the Court on Plaintiff Winston Tyler Hencely's ("Plaintiff") motion in limine for a Court order deeming the redacted Army Regulation 15-6 Report ("RAR") (ECF No. 1-1) admissible into evidence. (ECF No. 87.) Defendants Fluor Corporation, Fluor Enterprises, Inc., Fluor Intercontinental, Inc., and Fluor Government Group International, Inc. (collectively "Fluor") oppose the motion in limine, asserting that the RAR is incomplete due to the removal of a large volume of classified information from the unredacted AR 15-6 Report ("UAR")[1] and associated exhibits. For the reasons set forth below, the motion is denied *without prejudice*.

## BACKGROUND

This suit arises from a suicide bombing on November 12, 2016 at Bagram Air Field ("BAF") in Bagram, Afghanistan. Plaintiff asserts claims for damages he suffered after Ahmed Nayeb ("Nayeb"), an Afghan national working in Fluor's Non-Tactical Vehicle Yard ("NTV Yard") at BAF detonated a suicide vest bomb in a crowd gathered for a Veterans

---

[1] Hereinafter, the RAR and UAR will be referred to generically as "the Report."

1

Day event. In essence, Plaintiff asserts that Fluor's negligence allowed Nayeb to commit his suicide attack at BAF and proximately caused Plaintiff's injuries.

Investigators were on the scene of the suicide bombing within minutes after the blast collecting evidence. An investigating officer, then Major General Thomas James, U.S. Army,[2] was detailed and major investigative work began nine days after the bombing and concluded fifty days after the bombing. General James was aided by two Colonels, a Major, a Captain, and a number of other U.S. Army soldiers, all of whom have served in active combat and have extensive experience and training in military operations. General James was directed to make factual findings and recommendations about itemized questions, including a determination as to whether there were "any failings by Fluor Corporation or another company in the hiring or continued employment of the LNs [Local Nationals] involved in this incident" and recommendations, "as appropriate given your findings, on the hiring and supervision of LNs by Fluor Corporation or involved companies." (Appointment Mem., ECF No. 87-5 at 3–4.) During the month of December, the investigative team made six formal site visits, visiting the NTV Yard where Nayeb worked, the bombing site, entry control points, the hospital, and the laboratory that processed much of the evidence. In addition, the investigators conducted fifty-three formal interviews, which were subsequently reduced to sworn statements.

Fluor personnel participated in the investigation. General James and several team members conducted an on-the-record interview of Fluor management and in-country personnel on December 20, 2016. Present on behalf of Fluor for that interview were Ronald Riley (Fluor's Field Prime Contracts Manager), Jeff Uride (Fluor Project Manager

---

[2] General James has since been promoted to Lieutenant General.

with a human resource focus, based in Greenville. S.C.), William Joslin (Senior Fluor Maintenance Manager in charge of NTV Yard), Rexhap Rexhepi (NTV Logistics Supervisor), and Fluor's General Counsel Don Yenovkian. Fluor was also asked to answer four sets of written questions posed by the investigative team.

After completing the bulk of the investigation, the investigative team spent a week reviewing the draft report and compiling exhibits. The draft report was subject to two levels of review and the final Report was signed by General James on December 31, 2016. (ECF No. 1-1.) The Report is seventy pages long and has 243 exhibits, which total 3,140 pages. The Report made eight major findings, the first of which is: "Local National access and supervision was not properly enforced." (*Id.* at 4.) The RAR states, among a plethora of other findings: "The investigation determined that the primary contributing factor to the 12 November 2016 attack was Fluor's complacency and its lack of reasonable supervision of its personnel. These conditions enabled the suicide bomber to construct and employ a suicide vest inside the Bagram Airfield perimeter." (*Id.*)

As already noted, the version of the Report in the record—the RAR—is partially redacted to remove classified information. (*See* ECF No. 1-1.) Moreover, the Court is informed that thousands of pages of the supporting investigative materials are redacted. Plaintiff contends: "None of the findings are redacted or affected by any redactions. Nor is there any evidence that the redactions affect in any way the unredacted portions of the report." (ECF No. 87 at 12.) In contrast, Fluor asserts that the undredacted portions of the RAR and released portions of the investigative file reveal that critical evidence regarding the Military's force protection failures, the status of Military intelligence in the preceding days and months about a potential attack, and information as to how Nayeb smuggled or

3

gained access to deadly explosives on a secure Military base in the middle of a war zone is specifically removed. (ECF No. 92 at 12–15.) Fluor further asserts that the unredacted materials demonstrate that certain conclusions in the RAR are erroneous and inconsistent. (*Id.* at 16–19.)

Plaintiff initially filed the motion in limine in September 2020. (ECF No. 87) Fluor subsequently responded (ECF No. 92) and Plaintiff replied (ECF No. 96). On May 12, 2021, after deposing five of Fluor's declarants, Plaintiff filed a supplemental brief in support of the motion in limine. (ECF No. 139-1.) Fluor filed its supplemental response on June 2, 2021. (ECF No. 153.) The motion is ripe for consideration and the Court now issues the following ruling.

## STANDARD OF REVIEW

Federal Rule of Evidence 803(8) states that "a record or statement of a public office" . . . "[is] not excluded by the rule against hearsay, regardless of whether the declarant is unavailable as a witness" if the record sets out "in a civil case . . ., factual findings from a legally authorized investigation," and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). Rule 803(8) "assumes admissibility in the first instance." Fed. R. Evid. 803(8) advisory committee's note. "The admissibility of a public record specified in the rule is assumed as a matter of course, unless there are sufficient negative factors to indicate a lack of trustworthiness, in which case it should not be admitted. The party opposing admission has the burden to establish unreliability." *Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 241 (4th Cir. 1999) (citations omitted). "The party opposing the admission of such a report bears the burden of establishing its unreliability."

4

*Id.* "Rule 803(8) 'is not a rule of exclusion, but rather is a rule of admissibility' as long as the public record meets the requirements of the rule." *Id.* (citation omitted). "Factors to be used by a court in passing upon the admissibility of evaluative reports are: '(1) the timeliness of the investigation; (2) the special skill or experience of the official; and (3) possible motivational problems.'" *Distaff, Inc. v. Springfield Contracting Corp.*, 984 F.2d 108, 111 (4th Cir. 1993) (quoting *Ellis v. International Playtex, Inc.*, 745 F.2d 292, 300–01 (4th Cir.1984)). "Other factors may indicate a lack of trustworthiness: unreliability, inadequate investigation, inadequate foundation for conclusions, [and] invasion of the jury's province." *Id.* (citing Weinstein, *Weinstein on Evidence* § 803(8)).

Federal Rule of Evidence 106, commonly known as the Rule of Completeness, states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106.

## **DISCUSSION**

Throughout his briefing on the motion in limine, Plaintiff argues that the RAR is presumptively admissible based on the following: (1) it is a record or statement of public office; (2) it sets forth factual findings from a legally authorized investigation; (3) the investigation was timely conducted; (4) the investigative team was highly qualified and exercised great thoroughness; (5) no possible motivational problems have been identified that affected the investigation leading to the RAR; and (6) Fluor has not set forth *evidence* to meet its burden to show the RAR is unreliable. (*See* ECF Nos. 87, 96, 139-1.) Moreover, Plaintiff notes that courts have admitted similar AR 15-6 reports into evidence

5

under Rule 803(8) in the past. *See Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147, 156 n.4 (4th Cir. 2016) ("Generally, investigative government reports of this nature are admissible as an exception to the rule against hearsay under Federal Rule of Evidence 803(8)(A)(iii).")

For its part, Fluor argues that the "Partial Report"—Fluor's term for the RAR—cannot be admitted at this time because: (1) it is materially incomplete and contains demonstrably erroneous statements; (2) it includes extensive double hearsay, rendering it inadmissible even if the first layer of hearsay is excused by Rule 803(8); (3) it is not a final public record under Rule 803(8) because it does not include the written legal review from the Approval Authority that is required by Army Regulations and which becomes part of the report itself; (4) it is unreliable because it is the product of an investigation that lacked basic evidentiary rules and was skewed in favor of the Military and against Fluor; and (5) admitting the Partial Report into evidence, while effectively excluding the classified portions, would violate the Rule of Completeness and create undue prejudice. (ECF Nos. 92 & 153.)

While the intense advocacy in the parties' briefing includes moments of unnecessary insinuation, it is clear to the Court that counsel for both sides are acting in good faith and the UAR is unavailable because the Army's classification designations have made it unavailable. Both parties have done an exemplary job of presenting the strongest points to support their relative positions regarding the admissibility of the RAR. However, the plain truth is that the Court cannot possibly pass on the admissibility of a government report that neither it, nor the parties have seen in a form that is even close to complete. This is not a situation where *de minimis* redactions threaten to stymie the

6

routine admission of an otherwise admissible document. Rather, huge swathes of the Report have necessarily been removed due to their classified nature. To be sure the RAR includes conclusions about Fluor's purported responsibility for the bombing that are helpful to Plaintiff—not least the determination that Fluor's "complacency and its lack of reasonable supervision" was the "primary contributing factor"—but how is the Court to decide whether the classified version, in fairness, needs to be admitted under Rule 106 without seeing it? This question is made all the more salient by the fact that the currently visible portions of the Report touch upon ultimate issues in the case.

Plaintiff argues that nothing in the redacted portions of the Report could possibly undermine the Report's core findings about *Fluor's acts and omissions*. Fluor argues that the redactions uniquely and conveniently remove all information pertaining to the *Military's acts and omissions*, which, if revealed, would show that the Military, not Fluor, proximately caused the bombing. Both arguments invite the Court to speculate about the contents of the redacted portions and are ultimately reduced to circular reasoning—"We can *know* that the unseen portions are completely irrelevant/absolutely essential by the portions that we *can* see!" The Court declines to engage in such speculation and the motion in limine is denied *without prejudice*.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion in limine for a Court order deeming the redacted AR 15-6 Report admissible is DENIED *without prejudice*.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

June 8, 2021
Greenville, South Carolina

7