**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

Winston Tyler Hencely,

        Plaintiff,

    v.

Fluor Corporation; Fluor Enterprises,
Inc.; Fluor Intercontinental, Inc.; Fluor
Government Group International, Inc.,

        Defendants.

Civil Action No. 6:19-00489-BHH


**OPINION AND ORDER**

This matter is before the Court on Defendants Fluor Corporation, Fluor
Enterprises, Inc., Fluor Intercontinental, Inc., and Fluor Government Group
International, Inc.'s (collectively "Defendants" or "Fluor") motion, pursuant to Federal
Rule of Civil Procedure 12(c), for partial judgment on the pleadings with respect to
Count 6 of the amended complaint, in which Plaintiff Winston Tyler Hencely ("Plaintiff")
asserts a claim for breach of contract. (Am. Compl. ¶¶ 320–30, ECF No. 83.) The
question before the Court is whether Plaintiff has alleged sufficient facts to show he and
other soldiers were intended third-party beneficiaries of Fluor's government contract
with the U.S. Army ("Army"). For the following reasons, Fluor's motion for partial
judgment on the pleadings (ECF No. 102) is granted and this action is dismissed.

## BACKGROUND

This suit arises out of suicide bombing attack on November 12, 2016 by a
Taliban operative, Ahmed Nayeb ("Nayeb"), inside the secure perimeter of a U.S.
Military ("Military") base at Bagram Airfield, Afghanistan ("BAF"). On August 25, 2020,
Plaintiff filed an amended complaint asserting various claims against Fluor for injuries

he suffered when Nayeb detonated a suicide vest in a crowd at BAF. Plaintiff asserts claims for negligent supervision (Count 1), negligent entrustment (Count 2), negligent retention (Count 3), vicarious liability (Count 4), negligent control (Count 5), and breach of contract (Count 6). (*See generally* Am. Compl., ECF 83.)

At issue in Fluor's Rule 12(c) motion (ECF No. 102), is Plaintiff's breach of contract claim (Count 6). Plaintiff does not allege that he is a direct party to Fluor's contract with the Army. Nor does he allege that his breach of contract claim is premised on any other contractual relationship with Fluor. Instead, in alleging breach of contract, Plaintiff asserts that he is justified in bringing the claim on the basis that "U.S. soldiers, including Hencely, were the intended third party beneficiaries" of the Army's contract with Fluor. (*See* Am. Compl. ¶¶ 324–25.) Plaintiff further alleges that Fluor's breach of contractual duties proximately caused Plaintiff's injuries. (*See id.* ¶¶ 328–29.) Based on his claim for breach of contract, and the other counts above, Plaintiff seeks "general and compensatory damages for all components of mental and physical pain and suffering, past, present, and future" (*id.* ¶ 335), "special damages for the reasonable value of his past and future medical and rehabilitative treatment . . . and future lost wages and income" (*id.* ¶¶ 336–37), and "substantial punitive damages" (*id.* ¶ 338).

On December 16, 2020, Fluor moved for partial judgment on the pleadings, contending that Plaintiff has not met his rigorous burden in demonstrating that he qualifies for the "exceptional" status of a third-party beneficiary under Fluor's Logistics Civil Augmentation Program ("LOGCAP") IV Contract with the Army. Fluor argues that Plaintiff failed to allege sufficient facts plausibly demonstrating that both the contractor (i.e., Fluor) and the Army contracting officer intended to confer a direct benefit on

someone like Plaintiff who is not a party to the LOGCAP IV Contract. (*See* ECF No. 102-1 at 12–22.) Fluor argues that conferring third-party beneficiary status on soldiers on military bases like BAF would conflict with an existing statutory regime under the Veterans Benefits Act ("VBA"), and further, would run afoul of U.S. Supreme Court doctrines, including the *Feres* doctrine.[1] (*Id.* at 13 n.5.) Moreover, Fluor argues that a review of the LOGCAP IV contractual provisions that Plaintiff references in his opposition brief actually refute Plaintiff's position and confirm that he is not an intended third-party beneficiary. (ECF No. 116 at 8–14.)

### A.    The LOGCAP IV Contract

At the time of the attack, the relationship between Fluor and the Army was defined by Contract No. W52P1J-07-D-0008, known as the LOGVAP IV Contract, which the Army and Fluor entered into in 2008. (*See* Am. Compl. ¶¶ 77–82.)

The LOGCAP IV Contract states that "[t]he principal objective of LOGCAP is to provide Combat Support and Combat Service Support (CS/CSS) to Combatant Commanders (COCOM) and Army Service Component Commanders (ASCC) during contingency operations." (LOGCAP IV Contract § C-1.2, ECF No. 102-2 at 15; *see also* Am. Compl. ¶ 77 (alleging that "[t]he object of LOGCAP is to retain civilian contractors to handle logistical support tasks in conflict areas").) Furthermore, LOGCAP IV's Performance Work Statement states that its "[r]equirements shall focus on contingency skills and capabilities necessary to support Army or Department of Defense component; and to support U.S. Federal Government Inter-Agency requirements, and non-

---

[1] *Feres v. United States*, 340 U.S. 135 (1950) (holding that the United States is not liable under the Federal Tort Claims Act for injuries to active duty members of the armed forces for injuries arising out of or in the course of activity incident to service).

governmental and coalition forces requirements . . . ." (LOGCAP IV Contract § C-1.1.)

The Army Regulations pertaining to LOGCAP, which Plaintiff identifies in his amended complaint and quotes from in his opposition to Fluor's motion, (*see* Am. Compl. ¶ 76; ECF No. 113 at 13, 22), also confirm that the purpose of LOGCAP is to support overseas combat missions and contingency operations. Army Regulation 700-137 provides that the LOGCAP's purpose is "to augment the force by providing . . . externally driven operational requirements for rapid contingency augmentation support." Army Regulation 700-137 § 1-1 (Mar. 23, 2017). These regulations also explain that "LOGCAP supports scalable, ready, and responsible logistics and base support services by integrating contracted private sector capabilities to fulfill the operational commander's requirements." *Id.* § 6-1.

Under the LOGCAP IV Contract, the U.S. Army awarded Task Order 005 to Fluor for essential services and basic life support in the eastern and northern sections of Afghanistan, including BAF. (*See* Am. Compl. ¶¶ 83–87.) As the Fourth Circuit put it, when describing the purpose of an earlier generation LOGCAP contract, these services include facilities maintenance, theater transportation, dining facilities, laundry, water, and other base life support services that "augment Army forces" and free up "military units for other missions or [to] fill shortfalls." *In re KBR Inc., Burn Pit Litig.*, 744 F.3d 326, 332 (4th Cir. 2014) ("*Burn Pit III*") (internal quotation marks omitted).

Fluor's LOGCAP IV Contract also contained four clauses governing disputes and claims of breach. These provisions incorporated standard government contracts clauses from the Federal Acquisition Regulations ("FAR"):

- "Termination" clause from FAR 52.249-6, which specifies the grounds under

which the Government may terminate performance of work under the contract, and procedures that apply to such termination (*see* LOGCAP IV Contract § I-184 (incorporating 48 C.F.R. § 52.249-6), ECF No. 102-2 at 43);

- "Default" clause from FAR 52.249-8, which prescribes the circumstances under which the Government may terminate the contract by written notice of default (*id.* § I-190);

- "Disputes" clause from FAR 52.233-1, which addresses formal disputes between the United States and the prime contractor and explains that "all disputes arising under or relating to this contract shall be resolved under this clause" (*id.* § I-111 (incorporating 48 C.F.R. § 52.233-1));

- "Applicable Law for Breach of Contract Claim" clause from FAR 52.233-4, which requires that United States law applies to any breach of contract action between the parties arising from or related to the LOGCAP IV Contract (*see id.* § I-115 (incorporating 48 C.F.R. § 52.233-4)).

These FAR clauses establish the basic apparatus of a contract dispute or breach of contract claim under the LOGCAP IV Contract. They identify (i) who can bring breach of contract claims (the United States or its contractor, Fluor); (ii) how such disputes must proceed (under the Contract Disputes Act); and (iii) what remedies are available to address these disputes (including, for example, the Army's right to terminate the contract for convenience or default and the contractor's right to request an equitable adjustment and make changes to the contract). The provisions in the LOGCAP IV Contract and Task Order 005 that the parties have identified are silent about disputes between parties to the contract and individual third parties. Likewise, the identified

contract provisions do not say anything about a right for individual service members to sue the United States or the contractor (that is, Fluor) for breach of contract.

### B.    Plaintiff's Allegations Regarding Third-Party Beneficiary Status

The amended complaint contains three paragraphs pertaining to the issue of Plaintiff's alleged third-party beneficiary status. First, Plaintiff avers that, "[t]he LOGCAP Materials were intended to directly benefit U.S. soldiers at Bagram Airfield, including Hencely." (Am. Compl. ¶ 324.) Second, Plaintiff alleges that, "U.S. soldiers, including Hencely, were the intended third party beneficiaries of these contracts." (*Id.* ¶ 325.) Third, citing to a 2012 Fluor marketing publication that is not contained in the LOGCAP IV Contract, Plaintiff contends, "Fluor intended the LOGCAP Materials to benefit individual U.S. soldiers. Fluor's executive director of sales and account manager for LOGCAP IV stated what makes LOGCAP IV unique 'is our critical responsibility to the individual soldier. With this project you feel the dependency of the soldier and it makes it more personal.'" (*Id.* ¶ 326 (quoting "A Passion to Build" p. 178, ECF No. 1-3 at 7).)

### C.    Fluor's Motion Is Properly Before the Court

Defendants filed their Rule 12(c) motion for partial judgment on the pleadings on December 16, 2020. (ECF No. 102.) Plaintiff responded on January 12, 2021 (ECF No. 113), and Defendants replied on January 19, 2021 (ECF No. 116). At the outset of his response, Plaintiff raises several procedural objections to the filing and timing of the Fluor's Rule 12(c) motion. (*See* ECF No. 113.) The Court addresses each in turn. In short, none has merit.

First, Plaintiff takes issue with the fact that the instant Rule 12(c) motion for partial judgment on the pleadings regarding Plaintiff's breach of contract claim succeeded two other Rule 12 motions that Fluor filed on other grounds. (*See* ECF No.

113 at 6–7.) However, the Federal Rules of Civil Procedure provide for successive Rule 12(c) motions, and courts across the country often permit such practice. *See* Fed. R. Civ. P. 12(h) (specifically exempting "motion[s] under Rule 12(c)" from rule prohibiting multiple motions); *see, e.g., Deerborne Cottages, LLC v. First Bank*, No. 1:11-CV-178, 2012 WL 4363742, at *3 (W.D.N.C. Sept. 24, 2012) ("While a party is generally prohibited from making successive Rule 12 motions, . . . such prohibition does not apply to a motion for judgment on the pleadings based upon a failure to state a claim upon which relief can be granted."). The Court finds that Fluor's Rule 12(c) motion is properly before the Court. It is targeted to a specific issue that has not been briefed in Fluor's prior motions, and for similar reasons, is not a continuation of those prior motions in any way that could violate the page limit under Local Civil Rule 7.05.

Second, Plaintiff asserts that Fluor has already raised the argument that Plaintiff is not a third-party beneficiary in earlier motions. (ECF No. 113 at 7.) Plaintiff argues that the Court has rejected Fluor's third-party beneficiary argument twice, but in subsequent briefing acknowledges that the Court did not "address" the issue. (*See* ECF No. 119 at 3 n.5.) To be clear, the Court has not ruled on the arguments that Fluor sets out in the instant Rule 12(c) motion. Fluor's passing reference to its third-party beneficiary position in a prior filing does not constitute moving for judgment on that basis. Fluor merely previewed its third-party beneficiary argument in a footnote of a reply in support of a separate motion that addressed a wholly different issue— application of the South Carolina Door Closing Statute, S.C. Code Ann. § 15-5-150. (*See* ECF No. 67 at 3 n.4.) This is the first time the parties have litigated the question of whether Plaintiff has sufficiently alleged third-party beneficiary status, and it will be the

first time the Court resolves the issue.

Third, Plaintiff challenges the timing of Fluor's motion and Court's ability to decide the matter, arguing that inquiry into third-party beneficiary status is fact intensive and not suited for consideration on a Rule 12 motion. (ECF No. 113 at 7.) The Court disagrees that it is categorically precluded from deciding this issue on a Rule 12 motion.[2] Courts, including those within the Fourth Circuit, have dismissed breach of contract claims on Rule 12 motions brought on the ground that the plaintiff was not a third-party beneficiary. *See, e.g.*, *Mathis v. GEO Grp., Inc.*, No. 2:08-CT-21-D, 2009 WL 10736631, at *20–*21 (E.D.N.C. Nov. 9, 2009); *Threshold Techs., Inc. v. United States*, 117 Fed. Cl. 681 (2014); *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *8 (D. Md. Aug. 4, 2011). In *GEO Grp.*, in granting the motion to dismiss and resolving third-party beneficiary issues, the court considered the allegations in the complaint, relevant contractual provisions, and controlling statutes and regulations. *See* 2009 WL 10736631, at *20–*21. The Court may do the same here when evaluating whether Plaintiff's breach of contract claim is well-pled. Accordingly, the matter is ripe for resolution.

## STANDARD OF REVIEW

A motion for judgment on the pleadings brought pursuant to Rule 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim brought pursuant to Rule 12(b)(6). *See, e.g.*, *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). To withstand a motion for judgment on the pleadings, a complaint must contain

---

[2] The Court also notes that Plaintiff has had the opportunity to depose several Army and Fluor personnel who worked on the LOGCAP IV Contract, including the Army's contracting officer for Task Order 005, Ms. Lindsay Weindruch, on April 21, 2021. *See infra* n.3.

facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court "need not accept the [plaintiff's] legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal quotation marks omitted; alterations in original). Furthermore, "judgment in favor of the movants under Rule 12(c) is appropriate where the facts stated in the complaint are insufficient to support recovery under otherwise cognizable legal theory." *Bostic v. Bostic*, No. 6:14-2130-BHH, 2015 WL 5178163, at *1 (D.S.C. Sept. 3, 2015) (citing *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013)).

In resolving a Rule 12(b)(6) motion, and therefore a Rule 12(c) motion, "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Cobin v. Hearst-Argyle Television, Inc.*, 561 F. Supp. 2d 546, 550 (D.S.C. 2008) (internal quotation marks omitted).

## **DISCUSSION**

Fluor's motion raises the question whether Plaintiff's allegations are sufficient to demonstrate that he is an intended third-party beneficiary of the LOGCAP IV Contract and, correspondingly, whether he is permitted to pursue his breach of contract claim. The Court finds that Plaintiff has not sufficiently alleged that he is an intended third-party beneficiary to the LOGCAP IV Contract for three reasons: (1) recognizing a third-party beneficiary right of Plaintiff to sue Fluor or the United States for his service-connected

injuries is contrary to the federal statutory scheme set out by the VBA, and at odds with the *Feres* doctrine; (2) Plaintiff's amended complaint ignores the legal test governing third-beneficiary status by failing to plead anything about the requisite intent of the United States; and (3) Plaintiff's allegations are stated in generalized, conclusory terms and therefore insufficient to establish he was an intended third-party beneficiary, and his reliance on LOGCAP contractual provisions to rectify his pleading infirmities is misplaced.

### A. Third-Party Beneficiary Analysis

Federal common law governs civil liabilities arising out of a private contractor's performance of federal procurement contracts. *See Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705–06 (4th Cir. 2007) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504–05 (1988)). To qualify as a third-party beneficiary under federal common law, a plaintiff must show that "the contract reflects the express or implied intention of the parties to benefit the third party." *Trimble*, 484 F.3d at 706 (internal quotations omitted). "The intent of the parties to the contract is therefore the cornerstone of a claim for third-party beneficiary status." *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005). As a result, courts must examine the "precise language of the contract for a clear intent to rebut the presumption that the [third parties] are merely incidental beneficiaries" who lack standing to sue for breach of contract. *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1033–34 (9th Cir. 2012) (applying federal common law) (internal quotations omitted; alterations in original). The moving party can accomplish this by showing that "the [government] contracting officer [was] put on notice, by either the contract language or the attendant circumstances, of the relationship between prime

contractor and the third-party . . . so that an intent to benefit the third party is fairly attributable to the contracting officer." *Flexfab*, 424 F.3d at 1263. This is true even when the putative third-party beneficiary is seeking to recover from the private contractor and not the government. *See Trimble*, 484 F.3d at 707–08 (evaluating the intent of the government to decide whether a third-party could bring a breach of contract suit against the contractor).

Third-party beneficiary status is exceptional in the law and "should not be granted liberally," *Flexfab*, 424 F.3d at 1259, and courts must take a stringent approach to recognizing such exceptional status, *see Trimble*, 484 F.3d at 709 (recognizing that inquiry into third-party beneficiary status is ordinarily not ripe for resolution in the context of a Rule 12 motion, but noting that where the relevant documents are properly before the court and "the contracts in question were executed under a federal statutory scheme," resolution of the third-party beneficiary issue is proper at the motion to dismiss stage). Moreover, third-party beneficiary status is particularly difficult to prove in connection with a federal government contract. *See Flexfab*, 424 F.3d at 1260–63 (explaining the unique context of government contracts and noting that, while limited exceptions to the requirement of privity as a prerequisite for a breach of contract claim exist, "the government does not lightly consent to suit").

In analyzing whether a litigant possesses rights to enforce a contract as a third-party beneficiary, in addition to probing the intent of the contractor and the U.S. government as evidenced by contractual language, courts also look to whether granting third-party beneficiary status would frustrate the intent behind an underlying federal statutory scheme. *See, e.g.*, *Trimble*, 484 F.3d at 706–07 (affirming dismissal on third-

party beneficiary grounds, where recognizing the plaintiff's third-party beneficiary status "would be contrary to the intent and structure of the [Arms Export Control Act]").

In *Trimble*, the United Kingdom brought an action against Trimble, a domestic contractor who manufactured chips for use in GPS technology, alleging that Trimble breached its contract with the United States and that this breach caused harm to the United Kingdom as a third-party beneficiary of the Trimble-United States contract. *See id.* at 705. Pursuant to the Foreign Military Sales ("FMS") program, as authorized by the Arms Export Control Act ("AECA"), the United Kingdom had its own contract with the United States, under which the United Kingdom agreed to purchase Trimble's chips. *Id.* at 703. The agreement between the United States and United Kingdom included a clause, providing that claims relating to product discrepancies must be raised with the United States and channeled through a certain administrative procedure known as the Supply Discrepancy Report ("SDR") process. *Id.* at 704, 708. The SDR process did not contemplate litigation by the FMS purchaser against the United States, even in the event that the United States failed to resolve the issue with the domestic contractor. *Id.* Even before considering whether contractual provisions evidenced an intent of the United States and Trimble to convey third-party beneficiary status on the United Kingdom, and they did not, the court began its analysis with the AECA statutory scheme. The court found that implying a direct relationship between the United Kingdom and Trimble would be "contrary" to the method of purchase contemplated by the AECA. *See id.* at 707 ("To recognize such a right of action would allow the foreign purchaser to hold the contractor directly liable for the purchased goods, a level of accountability" that was not contemplated by the FMS transaction). In short, "any

recognition of third-party rights in [the United Kingdom] would be an end-run around the AECA and is prohibited." *Id.*    Accordingly, the *Trimble* court held that the United Kingdom was a mere incidental beneficiary to the Trimble-United States contract and could not sue to enforce it. *Id.*

### B.    Affording Plaintiff Third-Party Beneficiary Status Runs Contrary to His Exclusive Statutory Remedy for Service-Related Injuries Under the Veterans Benefits Act and Contrary to the *Feres* Doctrine

The Court finds the Fourth Circuit's analytical framework in *Trimble* instructive. Much like the party seeking third-party beneficiary status in *Trimble*, Plaintiff has his own direct contractual relationship with the United States. As in *Trimble*, there are two operative contracts: Fluor's LOGCAP IV Contract with the Army, and the contract that Plaintiff entered into with the government when he enlisted. (*See* Pl.'s Resp. to Local Rule 26.01 Interrogs., ECF No. 3 at 2 ("The Department of Veterans Affairs may have a subrogation interest in this matter due to medical benefits and other disability benefits provided to Plaintiff resulting from his injuries.").) Furthermore, similar to the AECA statutory scheme discussed in *Trimble*, there exists an underlying statutory regime in this case that is irreconcilable with the third-party beneficiary rights that Plaintiff seeks. Accordingly, as in *Trimble*, the third-party beneficiary inquiry here should begin with that statute. *See* 484 F.3d at 706 (beginning inquiry with analysis of whether third-party beneficiary status would undermine the AECA).

As part of enlisting, the VBA affords soldiers, like Plaintiff, federal remedies for service-related injuries. *See* 38 U.S.C. §§ 1110, 1131. Emphasizing that the VBA is "intended to be the sole remedy for service-connected injuries," *see Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 464 (1980), the U.S. Supreme Court has recognized that this exclusive statutory remedy eliminates a soldier's ability to sue the United States

in tort. *See United States v. Johnson*, 481 U.S. 681, 690 (1987). The VBA "provides an upper limit of liability for the Government as to service-connected injuries." *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673 (1977) ("To permit petitioner's claim would circumvent this limitation, thereby frustrating one of the essential features of the Veterans' Benefits Act.").

Plaintiff's breach of contract claim under Count 6 is predicated on service-related injuries stemming from Nayeb's attack on BAF. Affording Plaintiff third-party beneficiary rights to sue Fluor for breach of contract would *necessarily* mean he could also sue the Government for breach of contract pertaining to these service-related injuries. To allow Plaintiff this remedy would frustrate the purpose of the VBA, which Congress designed to be the sole, predictable remedy against the Government for such injuries. Crediting Plaintiff with third-party beneficiary status would also expose the Government to unlimited potential liability by way of breach-of-contract claims filed by the thousands of soldiers stationed at BAF. Thus, for similar reasons expressed in *Trimble*, "any recognition of third-party rights in [Plaintiff] would be an end-run around" the VBA and should be prohibited. *See Trimble*, 484 F.3d at 706–07.

Likewise, granting Plaintiff third-party beneficiary status would run afoul of the rationale underlying the *Feres* doctrine, which precludes the United States from facing tort liability for injuries to active duty service members. *See Feres*, 340 U.S. 135. In Count 6, Plaintiff brings a breach of contract claim, but he seeks *tort* remedies rather than any contract remedy (such as rescission). Conferring upon Plaintiff third-party beneficiary status to seek such tort remedies against Fluor would mean that Plaintiff and all similarly situated soldiers could also seek tort damages (under the guise of breach of

contract claims) against the Government. Thus, just as creating a third-party beneficiary right here would be an "end-run around" the VBA, it would also be an "end-run" around *Feres*.

Nonetheless, as in *Trimble*, the Court will "[a]ssum[e], *arguendo*, that recognition of [Plaintiff's] claim is not contrary to the [VBA]," *see* 484 F.3d at 707, and proceed to considering whether Plaintiff has demonstrated that Fluor and the Army evinced an intent to give Plaintiff third-party beneficiary status under the LOGCAP IV Contract. Plaintiff faces a tall order in view of the foregoing. In seeking to claim third-party beneficiary status, Plaintiff must show that it was the intent of the U.S. government contracting officer to grant U.S. soldiers an *additional* remedy through the LOGCAP IV Contract, on top of Plaintiff's VBA remedy, thereby creating unlimited potential liability on the part of the government. Plaintiff must show that the contracting officer had this intent despite the VBA's express design as an exclusive remedy that establishes a cap on the government's potential liability.

### C.    Plaintiff Fails To Allege Any Facts Regarding the Intent of the Army Contracting Officer

Even if Plaintiff's breach of contract claim is not prohibited as contrary to the exclusive statutory remedy contemplated by the VBA, Plaintiff's claim must be dismissed for the independent reason that the amended complaint does not allege facts that meet the test for third-party beneficiary status.

Both parties acknowledge that "[t]he proper test for determining third-party beneficiary status is whether the contract reflects the express or implied intention of the parties to benefit the third party." (ECF No. 113 at 10 (citing *Schuerman v. United States*, 30 Fed. Cl. 420, 433 (1994)); *see also* ECF No. 116 at 8.) As discussed *supra*,

this test is demanding and it is particularly difficult to satisfy in the context of a federal government contract. *See Threshold Techs., Inc.*, 117 Fed. Cl. at 701. The test requires demonstrating that both the contractor and the government's contracting officer had an intent to benefit the third party. *See Flexfab*, 424 F.3d at 1263 ("[F]or third-party beneficiary status to lie, the contracting officer must be put on notice, by either the contract language or the attendant circumstances, of the relationship between prime contractor and the third-party . . . so that an intent to benefit the third party is fairly attributable to the contracting officer."). In other words, there must be clear, *bilateral* understanding by both Fluor and the contracting officer that U.S. soldiers, such as Plaintiff, were an intended third-party beneficiary under the LOGCAP IV Contract. As Fluor points out in its briefing, the requirement for showing both the intent of the government contracting officer and the contractor is sensible and consistent with the notion that third-party beneficiary status is an "exceptional privilege" in the law. *See German All. Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit.").

In his amended complaint and opposition, Plaintiff does not address this necessary component of the third-party beneficiary test. Plaintiff's opposition cites three paragraphs that he contends are "factual allegations putting Fluor on notice that Plaintiff was an intended third-party beneficiary under the LOGCAP IV contract." (ECF No. 113 at 22 (citing to Am. Compl. ¶¶ 324–26).) Those three paragraphs are:

- "The LOGCAP Materials were intended to directly benefit U.S. soldiers at

Bagram Airfield, including Hencely." (Am. Compl. ¶ 324).

- "U.S. soldiers, including Hencely, were the intended third party beneficiaries of these contracts." (*Id.* ¶ 325).

- "Fluor intended the LOGCAP Materials to benefit individual U.S. soldiers. Fluor's executive director of sales and account manager for LOGCAP IV stated what makes LOGCAP IV unique 'is our critical responsibility to the individual soldier. With this project you feel the dependency of the soldier and it makes it more personal.' A Passion to Build at 178." (*Id.* ¶ 326).

These allegations do not state anything about whether the Army's contracting officer was notified that Plaintiff—and the thousands of similarly situated soldiers at bases worldwide—were intended to be third-party beneficiaries with the right to enforce the LOGCAP IV Contract, as the test under *Flexfab* requires.

Regardless of whether these statements are plausible well-pled allegations, which the Court addresses below, the Court finds that Plaintiff has failed to plead any facts bearing upon the contracting officer's notice or intention for Plaintiff to be a third-party beneficiary of the LOGCAP IV Contract.[3] Because neither Plaintiff's amended complaint nor his opposition even attempts to address the requisite intent of the Army contracting officer, his Count 6 claims cannot "support recovery under otherwise cognizable legal theory," and they must be dismissed. *See Bostic*, 2015 WL 5178163, at *1.

---

[3] On April 21, 2021, Plaintiff's counsel deposed Ms. Lindsay Weindruch who was the U.S. Army contracting officer for Task Order 005 under the LOGCAP IV Contract at the time of the November 12, 2016 attack and for four years prior to then. (*See* Weindruch Dep. 12:8–20, ECF No. 158-1.) Plaintiff's counsel stated that Ms. Weindruch's deposition testimony was "taken for all purposes" (*id.* at 11:1–2); however, the Court notes that counsel did not question Ms. Weindruch about the Army's intent to benefit Plaintiff as a third party under the contract.

### D. Plaintiff's Remaining Allegations Regarding His Alleged Third-Party Beneficiary Status Are Insufficient and Unsupported by Cited Contractual Provisions

Plaintiff's allegations in support of third-party beneficiary status are deficient in several other respects, notwithstanding the fact that they miss the mark in addressing a critical requirement, intent of the United States to benefit Plaintiff as a third party. As noted above, out of an 80-page amended complaint that contains more than 350 paragraphs, the Plaintiff rests his claim to third-party beneficiary status on three allegations. (*See* Am. Compl. ¶¶ 324–26.) The first two are almost identical, both asserting third-party beneficiary status in conclusory fashion. *Compare id.* ¶ 324 ("The LOGCAP Materials were intended to directly benefit U.S. soldiers at Bagram Airfield, including [Plaintiff]."), *with id*. ¶ 325 ("U.S. soldiers, including [Plaintiff], were the intended third party beneficiaries of these contracts."). Legal conclusions, such as these, must be ignored by the Court if unaccompanied by factual allegations. A plaintiff must plead facts rather than conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Philips*, 572 F.3d at 180. Accordingly, the Court will disregard these two paragraphs.

Besides these two generalized, unsupported allegations, Plaintiff's only other allegation relating to third-party beneficiary status is a quote from a Fluor marketing brochure. (*See* Am. Compl. ¶ 326.) Plaintiff's reference to this marketing material does not and cannot not meet the exceptional burden Plaintiff must overcome to establish that he is an intended third-party beneficiary to the LOGCAP IV Contract. First, there is no legal support for the proposition that a party can create third-party beneficiary status through a statement in a generic marketing brochure. Among other reasons, as

discussed above, third-party beneficiary status requires a bilateral understanding between the two contracting parties: the intent of both parties must be reflected, including the government's. *See Trimble*, 484 F.3d at 706; *see also Flexfab*, 424 F.3d at 1263. Nothing in the Fluor marketing quote could possibly show that the United States intended to allow Plaintiff the right to enforce the agreement. Plaintiff seems to concede as much because his allegation only declares that, "***Fluor*** intended the LOGCAP [IV Contract] to benefit individual U.S. soldiers" without mentioning whether the United States manifested the same intent. (Am. Compl. ¶ 326 (emphasis added).)

Second, the cited quotation from a post-hoc marketing brochure does not evidence Fluor's intent to treat U.S. soldiers as third-party beneficiaries to the LOGCAP IV Contract. The quotation is a statement from Fluor's executive director of sales and LOGCAP IV account manager that does not suggest that Fluor wanted to give each individual soldier the right to enforce the LOGCAP IV Contract for breach. (*See id.* ("[W]hat makes LOGCAP IV unique 'is our critical responsibility to the individual soldier. With this project you feel the dependency of the soldier and it makes it more personal.").) This marketing language conveys an understanding that soldiers are, at most, incidental beneficiaries of Fluor's work.

In the attempt to bolster his allegations regarding third-party beneficiary status, Plaintiff argues that a series of terms in the LOGCAP IV Contract and the LOGCAP's governing regulations prove that Plaintiff was an intended third-party beneficiary. (*See* ECF No. 113 at 11–13.) However, Plaintiff's selective quoting of these contract provisions does not, and cannot, correct the infirmities in Plaintiff's amended complaint. If anything, the referenced provisions refute Plaintiff's argument that he is a third-party

beneficiary to the LOGCAP IV Contract.

Plaintiff references LOGCAP IV Contract provisions that he argues "demonstrate that the soldiers at BAF were intended to directly benefit from the contract." (*Id.* at 11.) Plaintiff points to provisions in the Performance Work Statement that show that Fluor was responsible under the LOGCAP IV Contract for providing certain "combat support services" to all soldiers at BAF, which included, among other things, food, laundry, and waste management, as well as morale, welfare, and recreation like "computers, TV's, [and] video games." (*Id.* at 11–12.) However, providing benefits directly to Plaintiff does not mean that Plaintiff was intended to directly benefit from the contract. Indeed, the services Plaintiff cites are akin to the services that contractors provided to federal inmates in *GEO Grp.* and *Cash v. United States*, No. 14-510C, 2015 WL 194353 (Fed. Cl. Jan. 13, 2015), where both courts held that certain populations could reap benefits from contractual services without necessarily receiving third-party beneficiary rights under the respective contracts. *See, e.g., GEO Grp.*, 2009 WL 10736631, at *20 (holding contract requiring contractor to provide "all essential health services" as well as education, recreation activities, and telephone services to plaintiff did not confer third-party beneficiary status); *Cash*, 2015 WL 194353, at *2–*3 (holding prisoner was not a third-party beneficiary to a contract that required contractor to provide "secure custody, care and safekeeping"). The mere provision of services to a population under a government contract—here, all soldiers at BAF—does not convert that entire population into intended third-party beneficiaries to the contract with rights to enforce it.

Plaintiff's reliance on the LOGCAP governing regulations is similarly misplaced. Plaintiff argues that language in Army Regulation 700-137 shows that the purpose of

LOGCAP "as a whole is to 'execute contracted support services . . . for ***deployed forces performing missions***'" and Plaintiff, as a soldier part of that deployed force, was therefore within the class of intended third-party beneficiaries. (ECF No. 113 at 13 (quoting Army Regulation 700-137 ¶ 1-1) (emphasis in original).) This statement shows, contrary to Plaintiff's assertions, that LOGCAP is designed to focus on the needs and goals of the U.S. Military as a whole—not to directly benefit any one soldier. As Fluor rightly notes, there are other portions of Army Regulation 700-137 that corroborate this point, when stating LOGCAP's purpose clearly. (*See* ECF No. 116 at 9 (noting the applicable regulations state the purpose of LOGCAP is "'to augment the force by providing externally driven operational requirements for rapid contingency augmentation support'" and also explain that "'LOGCAP supports scalable, ready, and responsible logistics and base support services by integrating contracted private sector capabilities *to fulfill the operational commander's requirements*'" (quoting Army Regulation 700-137 §§ 1-1, 6-1) (emphasis added)).) These statements demonstrate a clear purpose to directly benefit the U.S. Military as an *entity*, which is not the same as a purpose to directly benefit individual soldiers that comprise the U.S. Military.

Additionally, in quoting from another LOGCAP IV Contract clause, Plaintiff argues that "Fluor was also obligated under the LOGCAP IV contract to 'provide and maintain work environments and procedures' that would protect 'Government personnel, property, materials, and equipment exposed to [Fluor's] operations and activities.'" (*See* ECF No. 113 at 12 (quoting 48 C.F.R. § 52.236-13).) Plaintiff reasons that, based on this clause, "it would absolutely be reasonable for Plaintiff to rely on that promise as manifesting Fluor and the government's intent to confer a right on him." *Id.*

However, Plaintiff has selectively quoted from the clause, which reads in full:

> [Fluor] shall provide and maintain work environments and procedures which will (1) safeguard *the public* and Government personnel, property, materials, supplies, and equipment exposed to Contractor operations and activities; (2) avoid interruptions of Government operations and delays in project completion dates; and (3) control costs in the performance of this contract.

48 C.F.R. § 52.236-13 (emphasis added).

Plaintiff's presentation of this clause elides the fact that "Government personnel" are not the only beneficiaries of Fluor's work—"the public" is grouped together in the same bucket as "Government personnel," such as Plaintiff. Thus, if Plaintiff could rely on this language as "manifesting an intention to confer a right on him," then so could members of the public, which defies logic, considering the foundational principal that "the government does not lightly consent to suit." *Flexfab*, 424 F.3d at 1260, 1263 (internal quotation marks omitted); *see Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352-54 (Fed. Cir. 2001) (holding members of the public could not demonstrate third party beneficiary status and "the failure of a government contractor to provide services does not create a cause of action in members of the public unless they can show a direct right to compensation"); *Rodriguez v. United States*, 69 Fed. Cl. 487, 493 (2006) ("When a member of the public alleges standing to sue as an intended third-party beneficiary of a government contract, the purpose of which is to render a public service, the public citizen is considered to be an incidental third-party beneficiary unless he can show a direct right to compensation." (internal citations and alterations omitted)).

Finally, Plaintiff points to the LOGCAP IV "Assignment and Release of Claims" clause as proof that Fluor and the Army "contemplated that claims may be brought by third parties based upon the liabilities of the contractor." (ECF No. 113 at 12–13 (citing

48 C.F.R. § 52.232-7(g)).) The argument misunderstands this clause, which makes no mention of third-party beneficiaries and is limited to the resolution of claims between parties *with contractual privity* under the prime contract between Fluor and the Army. (*See* ECF No. 116 at 12.) Moreover, allowing Plaintiff third-party beneficiary status on the basis of this clause would open the floodgates to third-party beneficiary claims for countless government contracts. Under 48 C.F.R. § 32.111(a)(7), *all* Time-and-Materials or Labor-Hour contracts must contain the standard clause that Plaintiff cites. *Id.* Plaintiff's interpretation of this clause is therefore at odds with the rare and exceptional nature of third-party beneficiary status, which is not liberally granted. *See GEO Grp.*, 2009 WL 10736631, at *18 ("Given that the United States enters thousands of government contracts per year totaling more than a billion dollars, third-party beneficiary status is particularly difficult to prove in connection with a federal government contract.").

*        *        *

Under these circumstances, Plaintiff has not adequately pled third-party beneficiary status, and he has no claim for breach of contract under any "cognizable legal theory." *Bostic*, 2015 WL 5178163, at *1. The Court is convinced that further discovery would be futile and would not change the fact that Plaintiff is at most an incidental beneficiary of the LOGCAP IV Contract. The Court is aware of no precedent in the Fourth Circuit or any court of appeals holding that active duty soldiers have standing as third-party beneficiaries to government contracts.

## CONCLUSION

For the foregoing reasons, Fluor's motion for partial judgment on the pleadings (ECF No. 102) is GRANTED, and Plaintiff's breach of contract claim under Count 6 is

hereby dismissed with prejudice. Accordingly, all other pending motions are hereby denied as moot and this action is dismissed *in toto*.[4]

**IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

August 13, 2021
Greenville, South Carolina

---

[4] In a separate Order, the Court granted summary judgment as to all of Plaintiff's state law tort claims, finding that they are preempted pursuant to the Federal Tort Claims Act's combatant activities exception. (ECF No. 176.) Therefore, upon dismissal of Plaintiff's breach of contract claim by the ruling herein, there are no remaining claims in this case and the action is subject to dismissal *in toto*.