IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| WINSTON TYLER HENCELY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:19-CV-00489-BHH |
| | ) | |
| v. | ) | |
| | ) | |
| FLUOR CORPORATION, | ) | |
| FLUOR ENTERPRISES, INC., | ) | |
| FLUOR INTERCONTINENTAL, INC., | ) | |
| FLUOR GOVERNMENT GROUP | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RENEWED MOTION IN LIMINE**
**TO ADMIT THE REDACTED ARMY REPORT[1]**

## INTRODUCTION

The redacted Army Report (RAR) (ECF No. 1-1) has emerged as a central piece of evidence in this case. The RAR is the Army's seventy-page report of its investigation into the bombing. The investigation began immediately after the attack and concluded that "the primary contributing factor to the 12 November 2016 attack was Fluor's complacency and its lack of reasonable supervision of its personnel." ECF No. 1-1 at 4. Both parties rely upon the RAR. *See*

[1] The Court denied *without prejudice* Plaintiff's initial such motion on June 8, 2021. ECF No.162, Opinion and Order at 1. Plaintiff incorporates herein Plaintiff's initial such motion, ECF No. 87, Plaintiff's Reply Brief, ECF No. 96, and Plaintiff's Supplemental Brief, ECF No. 139-1.

ECF No. 101-1 at 23 (Fluor brief). Both the Supreme Court[2] and the Fourth Circuit[3] relied on it, neither doubting that it was trustworthy—which is the deciding factor regarding whether to admit the RAR.[4] Plaintiff now asks the Court to allow the jury to rely on it.

The Court's decision whether to admit the RAR substantially dictates how discovery will proceed in this case; how many and what witnesses will be required at trial; upon which written

---

[2] *See Hencely v. Fluor Corp.*, 146 S. Ct. 1086, 1092 (2026) ("The Army concluded that Hencely's intervention 'likely prevent[ed] a far greater tragedy.'"); (the "Bagram Airfield Badge, Screening, and Access Policy" "required that Fluor escort red-badge holders like Nayeb in all areas of the base except at their work sites and maintain 'constant view' of them."); ("Instead of escorting Nayeb to the base exit at the end of his shift, Fluor relied on a sign-out system administered by another Afghan employee, in violation of the base's badge policies. The report found that this lax supervision 'enabled Nayeb to go undetected' for nearly an hour on the day of the attack and to walk at liberty throughout the base until Hencely confronted him. In sum, the report concluded that 'the primary contributing factor' to the attack was 'Fluor's complacency and its lack of reasonable supervision of its personnel."); ("[O]n each score, the Army concluded that Fluor *failed* express duties to the Government." (emphasis in original)). *See also id.* at 1105 ("The military relied on Fluor to supervise Nayeb's conduct on the base, and this arrangement led to the bombing that seriously injured petitioner.").

[3] *Hencely v. Fluor Corp.*, 120 F.4th 412, 420–21 (4th Cir. 2024) ("The AR 15-6 investigation revealed that the military knew Nayeb was a former Taliban member."); ("The report concluded that Nayeb likely did not board the bus but instead walked for 53 minutes, undetected, to the blast site."); ("According to the AR 15-6 investigation, Nayeb likely built his bomb vest while inside the military base, working as the sole employee on the night shift at the hazardous materials work center in the non-tactical vehicle yard, with only sporadic supervision."); ("In its AR 15-6 report, the military determined 'the primary contributing factor' to the attack was 'Fluor's complacency and its lack of reasonable supervision of its personnel.'").

[4] *See* ECF No. 162 at 4 ("The admissibility of a public record specified in the rule is assumed as a matter of course, unless there are sufficient negative factors to indicate a lack of trustworthiness . . ."); *Al Shimari v. CACI Premier Technology, Inc.* 170 F.4th 162, 201–202 (March 12, 2026).

discovery Plaintiff must insist in a probable motion to compel;[5] and, how much time is needed to prepare for trial—if the case does not resolve.[6]

Since the Court denied Plaintiff's first motion without prejudice (ECF No. 162 at 1, 7), the Supreme Court of the United States decided this case on the strength of the Army Report's findings. It recited them as the operative facts, quoted them at length, and observed that Fluor does not dispute them. *Hencely v. Fluor Corp.*, 146 S. Ct. 1086, 1092 (2026) (slip op. at 3–4, 8–9). A report whose findings the Supreme Court credited as the factual predicate of its holding cannot plausibly be branded too "untrustworthy" for a jury to see.

The June 8, 2021 denial of Plaintiff's motion in limine to admit the RAR rested on the state of the record—not on any finding that the Report is untrustworthy. The Court found both sides in good faith and recognized that the unredacted Army Report ("UAR") "is unavailable because the Army's classification designations have made it unavailable." ECF No. 162 at 6. Nothing in the Order forecloses admission.[7] The case has returned to this Court with Plaintiff's tort claims reinstated. *Hencely v. Fluor Corp.*, No. 21-1994, 2026 WL 1690072 (4th Cir. June 8, 2026).

---

[5] Plaintiff's counsel have dissected Plaintiff's prior written discovery in an attempt to overcome as many of Fluor's objections as possible and to limit the scope of requests about which further conferring is necessary, and in the hope of saving time and making any motion to compel as manageable as possible for the Court. Plaintiff has withdrawn 90 requests for production of documents. Plaintiff's counsel are sending Fluor counsel a meet & confer letter to try to narrow the issues, eliminate Fluor's "scope" objections, and eliminate objections heretofore made by Fluor rendered obsolete or inappropriate by the Supreme Court decision.

[6] It should be possible to resolve this case by settlement. Plaintiff and Plaintiff's counsel have been, and are, perfectly willing to settle this case. To date, Fluor has shown zero interest.

[7] In the cases pending before Judge Dawson (*Tangen v. Fluor Intercontinental, Inc. et al.*, 6:21cv00335), Fluor represented that "Judge Hendricks" held "that the redacted version of the Army Report is inadmissible." *Tangen*, ECF No. 109 at 5 n.3. That is not accurate: this Court denied Plaintiff's motion "without prejudice." ECF No. 162 at 7.

Under the Federal Rules of Evidence, the RAR is admissible. The RAR is admissible under Federal Rule of Evidence 803(8) as a "record or statement of a public office" that sets out the "factual findings from a legally authorized investigation." The investigation by Lieutenant General Thomas James and the other members of the Army investigation team, conducted immediately after the events of the bombing (which, at this point in time, occurred nearly a decade ago) is important evidence that timely and reliably documented the facts when they were fresh on the ground. The Fourth Circuit has also recently confirmed the admissibility of just such a report. *See Al Shimari v. CACI Premier Tech., Inc.*, 170 F.4th 162, 200–03 (4th Cir. 2026) (holding two investigative reports by Major Generals into the torture of prisoners at Abu Ghraib with factual findings and conclusions, which were drafted after conducting interviews of over 200 individuals, collecting 9,000 documents, and using analytical tools to collect data, were properly admitted).[8] *As a matter of law*, the RAR should be considered by a jury at trial.

While it is true that motions in limine are often resolved shortly before trial, when the Court's order can, as a practical matter, greatly simplify the discovery process and incredibly streamline trial preparation (and thereby steer a now nearly seven-and-a-half-year-old case toward resolution), Plaintiff's motion can hardly be called "premature." ECF No. 92, Fluor's Resp. to

---

[8] The recent *Al Shimari* opinion also clarifies that *even* in cases where the government invokes the state secrets privilege (which has *not* happened in Plaintiff Hencely's case) and prevents the disclosure of privileged information, dismissal of such a case is only appropriate where "virtually any conceivable response to [plaintiff's] allegations would disclose privileged information," or "virtually any reason the [defendant] could offer for its actions would require" the disclosure of privileged information, or where there is "simply no conceivable defense to [plaintiff's claims] that wouldn't also reveal the very information the government is trying to protect." 170 F.4th at 199–200 (citations omitted). Indeed, even where invocation of that privilege prevents the disclosure of "facts important to the prosecution or defense of a claim," dismissal is "not supported" by Fourth Circuit precedent. *Id.* at 200.

Pl.'s Motion in Limine, at 5. Plaintiff respectfully requests that the Court grant Plaintiff's renewed motion, now.[9]

## I. THE SUPREME COURT HAS ALREADY RELIED ON THE REPORT'S FINDINGS AS THE FACTS OF THIS CASE—AND FLUOR DID NOT DISPUTE THEM

The Supreme Court treated the Army Report's findings as the facts of this case. "The Army's investigation found Fluor primarily responsible for the attack." *Hencely*, 146 S. Ct. at 1092. The Court quoted the Report's findings that interviews "reveal[ed] a poor understanding by Fluor supervisors as to who was responsible for Nayeb's supervision" and "an unreasonable complacency by Fluor to ensure Local National employees were properly supervised at all times, as required by their contract." *Id.* And it recited the Report's bottom line: "the primary contributing factor" to the attack was "Fluor's complacency and its lack of reasonable supervision of its personnel." *Id.*[10]

Most telling here: "Fluor does not dispute that military officials found it to have failed in its contractual obligations. It also does not dispute that the Army found this failure *to be a cause* of Hencely's injuries." *Hencely*, 146 S. Ct. 1095 (emphasis added).

---

[9] This motion addresses each concern the Court expressed in its June 8, 2021 Order: that it could not "possibly pass on the admissibility of a government report that neither it, nor the parties have seen in a form that is even close to complete" and "declines to engage in such speculation" (ECF No. 162 at 6–7), answered in Parts III & V; that "huge swathes of the Report have necessarily been removed due to their classified nature" (*id.* at 7), answered in Part III; "how is the Court to decide whether the classified version, in fairness, needs to be admitted under Rule 106 without seeing it?" (*id.*), answered in Part III & V; and that "the currently visible portions of the Report touch upon ultimate issues in the case" (*id.*), answered in Part II.

[10] The Fourth Circuit likewise recounted the Report's findings as the factual narrative of this case. *Hencely*, 120 F.4th 412 (4th Cir. 2024), *vacated and remanded*, 146 S. Ct. 1086 (2026). The 2024 opinion is cited only for its factual recitation.

As a very practical matter, that treatment answers any "trustworthiness" attack Fluor might make.

Fluor's objection to the Report has never been about form—authentication, or a sponsoring witness. It is a substantive attack on the Report's trustworthiness. Yet, with this Court's Order in the record before them, both appellate courts relied on the Report's findings as fact.[11] That reliance corroborates the Report's trustworthiness. *See Rule 803(8) trustworthiness analysis at Part II.*

## II. THE RAR IS ADMISSIBLE

This Court set forth the standard for the admission of evidence under Federal Rule of Evidence 803(8) in its June 8, 2021 Opinion and Order. ECF No. 162 at 4–5. Under Rule 803(8), "a record or statement of a public office" . . . "[is] not excluded by the rule against hearsay, regardless of whether the declarant is unavailable as a witness" in a civil case if the record sets out "factual findings from a legally authorized investigation." *See also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162, 170 (1988) (where the Rule's requirements are met, the exception admits the report in full, and factual findings and trustworthy conclusions alike come into evidence). As this Court properly stated, "[t]he admissibility of a public record specified in the rule *is assumed as a matter of course*, unless there are sufficient negative factors to indicate a lack of trustworthiness, in which case it should not be admitted." ECF No. 162 at 4 (quoting *Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 241 (4th Cir. 1999) (citations omitted) (emphasis added)). "The party opposing the admission of such a report bears the burden of establishing its unreliability."

---

[11] "In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial." *Kennedy v. Joy Techs., Inc.*, 269 F. App'x 302, 308 (4th Cir. 2008). A court may consider the content of otherwise inadmissible material where the proponent shows the information can be put into admissible form. *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 539 (4th Cir. 2015), *as amended* (June 24, 2015). Summary-judgment practice examines content rather than form. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

ECF No. 162 at 4–5. Thus, because the RAR is a "record or statement of public office" that sets forth "factual findings from a legally authorized investigation," the Court's analysis of the RAR should begin from the standpoint that it is presumptively admissible in this case. Fed. R. Evid. 803(8). That the Report's findings "touch upon ultimate issues," ECF No. 162 at 7, is a reason they are probative, not a reason to keep them out. *See Al Shimari*, 170 F.4th at 200–03 (affirming admission of Army reports containing responsibility conclusions).[12]

The Court also noted in its June 8, 2021 Opinion and Order that in passing on the admissibility of such reports, the Court may consider "(1) the timeliness of the investigation; (2) the special skill or experience of the official; and (3) possible motivational problems." ECF No. 162 at 5 (citations omitted). This is longstanding Fourth Circuit law. *Al Shimari*, 170 F.4th at 202.

An analysis of the RAR utilizing these factors supports its admissibility.

The Army's underlying investigation into the bombing, which forms the basis of the RAR, was unquestionably timely. Military Police were on site within three minutes of the blast. ECF No. 1-1, RAR at 57. Major investigative work began nine days after the bombing and concluded 50 days after the bombing. ECF No. 87-2.

The investigation was conducted by skilled, experienced officials. Lieutenant General Thomas James, a highly decorated military officer,[13] led the investigation, which took "precedence over all [his] other duties and responsibilities." ECF No. 87-5 at 2. Lt. Gen. James and nine additional personnel from the 7th Infantry Division (including two Colonels, a Major, and a

---

[12] This answers a concern the Court noted in its June 8, 2021 Order: that "the currently visible portions of the Report touch upon ultimate issues in the case." ECF No. 162 at 7.

[13] *See* ECF No. 87 at 9.

Captain) deployed to Afghanistan for the investigation, where they were also assisted by two in-country personnel with expertise in force protection and contracting. ECF No. 1-1, RAR at 2.

There were no motivational problems which affected the outcome of the investigation. Upon his assignment, Lt. Gen. James was asked to conduct an investigation "as broad as necessary" to give Army leadership "a full understanding of the situation." ECF No. 87-5 at 3. The memorandum James was to put together was intended to provide answers to serious questions regarding the events of November 12, 2016 and culminate in a detailed report with "findings supported by the evidence." *Id.* at 6. The work of Lt. Gen. James, and the Army investigation team, resulted in a 70-page report. ECF No. 1-1.

The Report's findings and conclusions were critical of both Fluor *and* the military. "The investigation determined that the primary contributing factor to the 12 November 2016 attack was Fluor's complacency and its lack of reasonable supervision of its personnel." ECF No. 1-1 at 4. Lt. Gen. James did not hesitate to blame the Army where he found issues with its performance. *See*, *e.g.*, ECF No. 1-1 at 2–4 (noting "disjointed antiterrorism and force protection efforts" and that leadership at Bagram had permitted "a pervasive 'culture of complacency'"). Fluor has admitted the RAR "assigned blame to both the Army and Fluor." Brief for the Respondent at 13, *Hencely v. Fluor Corp. et al.*, No. 21-1994 (U.S. Sept. 15, 2025).

The fairness of the investigation is underscored by the testimony of Fluor's own witnesses, who have praised the aptitude and integrity of the officers who conducted it. Fluor employee, Lt. Gen. (Ret.) John Michael "Mick" Bednarek, testified that Lt. Gen. James was a "superb officer," "top officer," and an "excellent superior Army leader." ECF No. 165, Bednarek Dep. at 40/11, 15–16. Additionally, retired Army contracting officer Gordon Jones, who has read the classified

version of the RAR,[14] and whose declaration Fluor relied upon in support of its Motion for Summary Judgment, described investigative team member Colonel Carol Tschida as "one of the finest commanding officers I've ever worked for." ECF No. 157-1, Jones Dep. at 31/3–4. Jones further testified that

> Colonel Tschida would take every step possible to make sure that her investigation included all of the information, gathering all the information, both good and bad, for presentation to the -- to the Army authorities to make sure that the proper conclusion was reached. She was effective, efficient, intelligent, and focused on execution of the mission; and our mission did not involve fraud or deception.

*Id*. at 31/12–20.[15] This testimony further illustrates that the members of the Army investigation team were committed to finding the truth—not merely spinning a narrative that cast the Army in a favorable light.

The trustworthiness of the RAR's findings and conclusions is further reinforced by Fluor's own participation in the investigation. Fluor was given the opportunity to answer at least four separate sets of written questions posed by the Army. *See* ECF No. 11-3, 11-4, 11-5; Exh. 1, Fluor Resp. to 15-6 Questions Received Dec. 20, 2016 (PX 33). Fluor was also invited to send representatives it chose to sit for a transcribed interview, where Fluor Corporation's General Counsel (Don Yenovkian) was present. Exh. 2, PX 4.[16] During that interview, Fluor's employees

---

[14] ECF No. 157-1, Jones Dep. at 26/21–27/16.

[15] Fluor has, in past briefing, alluded to alleged motivational issues with the Army investigators. Such allegations are contrary to what Fluor's own General Counsel (Don Yenovkian) said when the Army investigators interviewed five Fluor representatives on December 20, 2016. Asked if there was anything from Fluor "to wrap up," Yenovkian responded "No, sir, just thank you for your courtesy, professionalism, et cetera." Exh. 2, PX 4 at 34/19-22.

[16] Also sent by Fluor to the interview were Fluor employees Ronald Riley, who was Director of Prime Contracts for Fluor (ECF No. 163, Riley Dep. at 78/4–7), Jeff Uribe, from Fluor's Human

*did not dispute* Lt. Gen. James' statement that the bomber Nayeb was "unsupervised."[17] *Id.* at 23/18–24/2.[18] Fluor employee Riley, selected by Fluor to attend the interview, testified under oath that *none* of the Fluor personnel spoke up to dispute Lt. Gen. James' statement that Nayeb was "unsupervised." ECF No. 163, Riley Dep. at 80/25-82/6.[19]

---

Resources Department (*id.* at 78/16–22), William Joslin, and Rexhap Rexhepi, who were supervisors of the NTV yard where the bomber Nayeb worked. *Id.* at 78/8–15.

[17] Fluor also had an opportunity to dispute the findings in the Army Report through the show-cause process. The Army "fundamentally disagree[d]" with Fluor's contentions. ECF No. 96-9 at 1.

[18] The transcript of the interview could not be more clear—none of the Fluor representatives disputed Lt. Gen. James' conclusion:

> IO: (Lt. Gen. James, Investigating Officer): Yeah. I got it. So, what that tells me, essentially is that he was unsupervised. Because we can't find somebody that supervised him that night. Is that correct?
> **[No verbal response. Mr. Joslin raised his hands in the air, as if to say "I don't know."]**
> IO: I mean, that is just as straight as I can be.
> **[No verbal response.]**
> IO: Unknown?
> **[No verbal response.]**

[19] ECF No. 163, Riley Dep. at 80/25-82/6.

> Q Isn't it true that not one of you five 1 people from Fluor spoke up and disagreed with Lieutenant General James' statement that Nayeb was unsupervised?
> A We had responded in writing to general James' question. I don't recall Mr. Joslin raising his hands or what the raising of his hands meant. I don't know if he meant "I don't know." I don't know what he meant.
> Q Did anybody speak up and dispute what Lieutenant General James said; yes or no?
> A There was no verbal response.
> Q Did anybody say in response to Lieutenant General James' statement that Nayeb was unsupervised, did anybody say, quote, no, the Army is to blame, closed quote? Anybody say that?
> A There was no verbal response.
> Q Did anybody for Fluor deny that it was Fluor's duty to escort Nayeb off the base that morning?
> A There was no verbal response if that was -- if that's what his preceding question was. As far as what I'm seeing here, there was no verbal response.

Fluor has cited no *evidence* to support its attempts to impugn the motivations of the Army investigative team; those attempts are pure speculation and should be rejected. *See Ellis v. International Playtex, Inc.*, 745 F.2d 292, 303 (4th Cir. 1984) (rejecting argument that government studies were properly excluded from evidence where allegations of bias in victim responses were "purely speculative"). Since Fluor, as the party opposing admission of the RAR, "bears the burden of establishing its unreliability," bald assertions that Army investigators had an improper motive when drafting the report are far from enough to prohibit the RAR's admission into evidence. *Zeus Enterprises, Inc.*, 190 F.3d at 241. Because Fluor has not met its burden, the RAR is admissible.

## III. FLUOR CANNOT CARRY ITS BURDEN BY OFFERING SPECULATION OR COMPLAINING THAT ITS LACK OF ACCESS TO THE UAR IS "UNFAIR"

To exclude the RAR, Fluor must come forward with evidence—not conjecture. Fluor "bears the burden of coming forward with enough 'negative factors' to persuade a court that a report should not be admitted." *Gentile v. Cnty. of Suffolk*, 926 F.2d 142, 148 (2d Cir. 1991) (citation omitted). "*[T]here must be 'an affirmative showing of untrustworthiness*, beyond the obvious fact that the declarant is not in court to testify.'" *Apollo Fuel Oil v. United States*, 73 F. Supp. 2d 254, 261 n.8 (E.D.N.Y. 1999) (citation omitted) (emphasis added). An opponent who fails to specify negative factors proving untrustworthiness is not entitled even to an evidentiary hearing. *Gentile*, 926 F.2d at 148. The Fourth Circuit reaffirmed the burden Fluor bears in March

---

Q Did anybody from Fluor, any of you five people from Fluor, deny that it was Fluor's duty to 1 supervise Nayeb?
A During this, there was no verbal response.
THE WITNESS: I'd like to take a break if we could.
MR. BUTLER: Sure. Any time you want a break, we'll take one.

of this year: "[t]here is a presumption of admissibility of records under this exception and the burden of establishing unreliability belongs to" the opponent. *Al Shimari*, 170 F.4th at 200–03.

For the entire seven and a half years of this litigation, Fluor has never offered a single piece of actual *evidence* that the RAR was untrustworthy.[20]

Fluor asserts that the redactions exculpate it. But an assertion is not evidence. In ten years, Fluor has never offered evidence that the redactions exculpate Fluor or contradict the unredacted conclusions in the RAR. Fluor cannot show that the RAR is untrustworthy.

Redactions alone are not a negative factor: "Relators cite no authority suggesting partial redaction of a public record is a sign of untrustworthiness, and we decline to find so here." *United States v. The Boeing Co.*, 825 F.3d 1138, 1146 (10th Cir. 2016) (partially redacted, classified FAA report); *accord Salim v. Mitchell*, 268 F. Supp. 3d 1132, 1158–60 (E.D. Wash. 2017).

No legal authority conditions admissibility of an otherwise admissible document on the volume of collateral material withheld. The Supreme Court in *Beech* admitted a JAG report "supported by some 60 attachments" without requiring the attachments be admitted. 488 U.S. at 157. In March 2026, the Fourth Circuit affirmed the admission of reports built from more than 200 interviews and 9,000 documents. *Al Shimari*, 170 F.4th at 200–03.[21]

Rule 803(8)'s presumption of trustworthiness attaches to the investigation itself — here, Lt. Gen. James's — not item-by-item to the materials the investigators gathered. In *Stapleton*, the

---

[20] Fluor has known since it first read Plaintiff's Complaint after being served on February 27, 2019 (ECF No. 6) that the RAR was central to this litigation. Plaintiff's Complaint cited the RAR 52 times. The RAR was also Exhibit 1 to Plaintiff's Complaint. ECF No. 1-1.

[21] This addresses the Court's observation that this "is not a situation where de minimis redactions threaten to stymie the routine admission of an otherwise admissible document," but one where "huge swathes of the Report have necessarily been removed due to their classified nature." ECF No. 162 at 6–7. The volume of classified material withheld is not among the trustworthiness factors, and no authority makes it outcome-determinative.

district court admitted the government's air-crash investigation report over hearsay objections to its underlying materials, and explained that editing — not exclusion — is the remedy for any problem portion:

> Where investigators rely on hearsay and non-hearsay in compiling a report, the court may review and edit certain portions of the report, rather than excluding the entire exhibit. Edited portions of the report remain admiss[i]ble because Rule 803(8) attaches an assumption of trustworthiness to the government investigation as a whole.

*In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. 1493, 1497 (D. Colo. 1989) (citations omitted). *Chevron Pipe Line* applied the same principle to four federal pipeline-safety investigative documents — quoting this exact passage from *Stapleton* — and admitted all four:

> [T]he court holds that the PHMSA Documents are admissible under Rule 803(8) with the caveat that redactions within those documents may be necessary to avoid other potential evidentiary problems.

*Chevron Pipe Line Co. v. Pacificorp*, No. 2:12-CV-287-TC, 2016 WL 1627613, at *6 (D. Utah Apr. 22, 2016); *see id.* ("[a]n authorized report of a government agency is assumed to be trustworthy absent evidence to the contrary") (citation omitted).

Under Rule 402 "relevant evidence"—which the RAR clearly is—"is admissible," unless specifically provided otherwise by the specified exceptions. Rule 402's list of exclusion sources "is an exclusive list." *United States v. Lowery*, 166 F.3d 1119, 1125 (11th Cir. 1999). Rule 403 speaks to whether something otherwise admissible can be excluded because of "unfair prejudice," but then only "if its probative value is substantially outweighed by the danger" of such "unfair prejudice." Rule 403 in this Circuit "is a rule of inclusion, generally favoring admissibility," and "damage to a defendant's case is not a basis for excluding probative evidence." *United States v. Miller*, 61 F.4th 426, 429–32 (4th Cir. 2023) (citations omitted).

Exclusion for "unfair prejudice" is "an extraordinary remedy that should be used sparingly." *Miller*, 61 F.4th at 429. Unfair prejudice means evidence that invites decision on an improper basis. *See* Fed. R. Evid. 403 Advisory Committee's Notes ("unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"); *Miller*, 61 F.4th at 429–32.

Fluor's entire "unfair prejudice" argument is based not on what the evidence is, but on the claimed unavailability of evidence. But the claimed "unavailability" or "incompleteness" of evidence goes to the weight of the evidence rather than to its admissibility, *see United States v. Wein*, 521 F. App'x 138, 140 (4th Cir. 2013); *Crawley v. United States*, 268 F.2d 808, 811 (4th Cir. 1959), and the remedy is argument to the jury. *See United States v. Capers*, 61 F.3d 1100, 1106–07 (4th Cir. 1995). Once again, the burden is Fluor's: it must prove — not speculate — that admission of the RAR would cause Fluor "unfair prejudice," meaning harm to the fairness of the trial, not merely to Fluor's prospects of winning it.

Fluor's position in this case is clear—Fluor argues that because some evidence is classified and thus unavailable to Fluor, Fluor wins the case. That has never been the law. *In re U.S.*, 872 F.2d 472, 476 (D.C. Cir. 1989), quoting *Ellsberg v. Mitchell,* 709 F.2d 51, 65 (D.C. Cir. 1983) ("[t]he result is simply that the evidence is unavailable, as though a witness had died, and the case will proceed accordingly, with no consequences save those resulting from the loss of the evidence."). *See also United States v. Reynolds*, 345 U.S. 1, 12 (1953) (affirming government's ability to withhold accident report but remanding case for further litigation without evidence protected by the privilege).

The same is true here: the trial goes forward with the evidence that is available—the RAR, and Rule 803(8) tells the Court what to do with it—the opponent who offers speculation instead

of evidence has not carried its burden and the evidence is admitted. *Gentile*, 926 F.2d at 148; *Apollo Fuel Oil*, 73 F. Supp. 2d at 261 n.8.

## IV. FLUOR SUFFERS NO "UNDUE PREJUDICE" BECAUSE THE REDACTED MATERIAL IS UNAVAILABLE

The very premise of Fluor's argument does not hold up. Fluor claims to want the redactions so it can blame the Army. But that the Army may have also been at fault cannot exculpate Fluor. The direct proximate cause of the bombing was Fluor's failure to escort the bomber off the base. But for that failure, there would have been no bombing in which Plaintiff was injured that day.

There is no apportionment to the Army under South Carolina law. *Smith v. Tiffany*, 419 S.C. 548, 560 (2017) ("[F]ault may not be apportioned to immune nonparties under [S.C. Code § 15-38-15].).

All of Fluor's arguments also overlook an indisputable fact: Fluor has had plenty of time (10 years), assets ($8.2 billion), personnel (23,000 employees), and lawyers and investigators (all Fluor chose to hire) to thoroughly investigate the bombing to try to exculpate itself or try to marshal evidence to divert the jury by blaming the Army. It is a fact that for the most part evidence was available from two sources: Army personnel and Fluor personnel. The latter – Fluor personnel – clearly knew and know more about why Nayeb was allowed build the bomb at his Fluor worksite and was left free from escort to wander around the base that morning than did the former, the Army personnel. Supervision and escort was Fluor's duty—not the Army's. *See* n. 2, *infra* (from the Supreme Court decision).[22]

---

[22] A Fluor attempt to develop exculpatory evidence is aided by the fact that some of its employees *have seen the redactions.* They know where to look for the "evidence" Fluor says is "unavailable" to Fluor.

Yet Fluor *claims* that it did no investigation of the bombing.[23] One struggles to reach any conclusion about that other the obvious one: Either Fluor did no investigation because it knew what that would reveal, or Fluor did an investigation and seeks to hide it because it knows what that reveals.

Fluor's efforts to blame the Army are nothing but an attempted diversion. Plaintiff can stipulate the military was negligent, and that will not change the fact that Fluor's actions, or inactions, were an "efficient or direct cause" of Plaintiff's injuries. *S.C. Pattern Jury Instructions—Civil* § 20-2, Proximate Cause. There is no doubt that it was Fluor's own breaches of duty—failing to get Nayeb off the base, and letting Nayeb build the bomb at his Fluor worksite and wander around the Base unescorted—without which the bombing could never have occurred. Those failures directly and proximately caused the bombing and Plaintiff's injuries. Fluor can try to distract and delay by blaming the Army "til the cows come home," but that won't exculpate Fluor.

## V. THE COURT SHOULD REVIEW THE UAR *EX PARTE* AND *IN CAMERA*

While insisting that the redactions in the RAR exculpate it, Fluor has never tried to get that document to this Court for *in camera* review. As Plaintiff pointed out in his Reply Brief on the original motion, nearly six years ago:

---

[23] Fluor's own employee Ronald Riley testified under oath – over and over again – with Fluor counsel sitting beside him, that Fluor did no investigation of the bombing. ECF No. 163 (3/31/21 Riley Dep.) at 14/23-15/15 ("Q: Did Fluor conduct an investigation?" A: "Not that I'm aware of"), 18/25-19/5 ("Q: Did Fluor conduct any investigation at all of this bombing where five people were killed and 17 were injured?" A: "Not that I'm aware of."). *See also id.* at 16/24-17/6, 18/4-7, 19/18-24, 23/24-24/6 ("I am not aware of a Fluor investigation"), 54/16-17 ("I've already answered that Fluor did not do an investigation"), 75/8-18. That deposition was 4 ½ years after the bombing. Fluor has never contradicted that testimony. Riley was Fluor's Director of Prime Contracts (ECF No. 163, Riley Dep. at 78/4-7). He was selected by Fluor to attend the transcribed interview with Army investigators; his declaration was filed by Fluor in support of Fluor's motion for summary judgment.

> ***If*** Fluor actually thought there might be something within some "classified" information that casts doubt on the RAR then Fluor could have long ago obtained the unredacted Army Report ("UAR") for this Court's *in camera* review - this Court has a statutory as-a-matter-of-law security clearance. That might or might not have required a Court Order, but Fluor has not been shy about filing motions. Then the Court itself could have compared the RAR to the UAR, to see if Fluor's mere speculations had any basis at all. Fluor made no attempt to get the UAR to this Court for *in camera* review, despite its burden to contest admissibility *with evidence.*

ECF No. 96 at 3–4.[24]

In denying Plaintiff's first motion to admit the RAR, the Court wrote that it "cannot possibly pass on the admissibility of a government report that neither it, nor the parties have seen in a form that is even close to complete." ECF No. 162 at 6–7. Those concerns were well taken on the record as it stood. But Rule 803(8) answers both.

If the foregoing is not enough to outright reject Fluor's arguments against admission of the redacted Army Report, this Court, which automatically has the necessary clearance to see the UAR,[25] can review the un-redacted Army Report and then decide *the veracity* of Fluor's

[24] In that Reply Brief, filed on October 12, 2020—almost six years ago—Plaintiff further observed: "While Fluor might have claimed (but did not) it did not have enough time to obtain the UAR for this Court's *in camera* review, that would be misleading: Fluor has expected litigation since the bombing occurred. *See* Fluor's Resp. to Pl.'s RFA 345 ("Please admit that Fluor anticipated litigation on November 12, 2016. **Response:** Admitted.").

[25] 28 C.F.R. § 17.46(c) ("Members of Congress, Justices of the United States Supreme Court, and Judges of the United States Courts of Appeal and District Courts do not require a determination of their eligibility for access to classified information...."); *Washington v. Trump*, 847 F.3d 1151, 1168 n.8 (9th Cir. 2017) ("[T]he Government may provide a court with classified information. Courts regularly receive classified information under seal and maintain its confidentiality. Regulations and rules have long been in place for that."); *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 104 (D.D.C. 2012) ("The Court believes that it has the discretion to order disclosure of classified information to the Court in a civil case where the information is material to the resolution of

representations that the redactions exculpate Fluor and supposedly prove that the conclusions in the Army Report are untrustworthy. If the Court prefers to see the entire UAR before ruling, such a review will allow the Court to determine if Fluor's speculations have any merit or not.

If the Court, after reviewing the UAR and its exhibits, concludes that any discrete part of the redacted Report is untrustworthy, it need not exclude the Report; it may simply redact that portion and admit the rest. The trial judge has "the discretion, and indeed the obligation, to exclude an entire report *or portions thereof* . . . that she determines to be untrustworthy." *Beech*, 488 U.S. at 167–68 (emphasis added). That is how the district court in *Al Shimari* handled the voluminous Army reports—it "parse[d] through the voluminous Reports" and excluded untrustworthy portions—and the Fourth Circuit affirmed. 170 F.4th at 200–03; *see In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. at 1497 (courts "may review and edit certain portions of the report, rather than excluding the entire exhibit").

**CONCLUSION**

The course of this litigation, and perhaps whether this lawsuit may be quickly resolved, depends on the Court's determination of this Motion. Fortunately, for all of the reasons stated above, the proper way to answer the question is clear: the RAR is admissible under Federal Rule of Evidence 803(8). Fluor has advanced no legitimate reason the RAR should be considered untrustworthy. The Court already has everything the trustworthiness factors require: the RAR, the record of how the investigation was conducted, and the Supreme Court's own treatment of the findings. Therefore, Plaintiff respectfully requests that the Court enter an order deeming the RAR admissible in evidence.

---

disputed legal issues and where alternatives to reliance upon classified information are inadequate to satisfy the interests of justice.").

Respectfully submitted this 13th day of August, 2026.

*s/ Beattie B. Ashmore*
BEATTIE B. ASHMORE, #5215
Beattie@BeattieAshmore.com
BEATTIE B. ASHMORE, P.A.
650 E. Washington Street
Greenville, S.C. 29601
T: (864) 467-1001 F: (864) 672-1406

W. ANDREW BOWEN, #10510
andrew@bowenpainter.com
PAUL PAINTER, III
paul@bowenpainter.com
Georgia Bar No. 520965
BOWEN PAINTER, LLC
800 Commercial Court, Suite 1
P.O. Box 15008 (31416)
Savannah, GA 31406
T: (912) 335-1909 F: (912) 335-3537

JAMES E. BUTLER, JR.
Georgia Bar No. 099625
jim@butlerprather.com
DANIEL E. PHILYAW
Georgia Bar No. 877765
dan@butlerprather.com
BUTLER PRATHER LLP
12 Lenox Pointe
Atlanta, GA 30324
T: (404) 321-1700 F: (404) 321-1713

D. JOSEV BREWER #9188
Joe@JoeBrewerlaw.com
The Law Office of D. Josev Brewer
650 E. Washington Street
Greenville, SC 29601
T: (864)383-5250

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I do hereby certify that I have this date served all counsel of record in the within matter with a copy of the above pleading by sending via electronic mail addressed as follows:

| | |
|---|---|
| Raymond B. Biagini<br>Daniel L. Russell, Jr.<br>COVINGTON & BURLING, LLP<br>850 Tenth Street, NW<br>Washington, DC 20001<br>rbiagini@cov.com<br>drussell@cov.com<br><br>J. Reid Simpson<br>YETTER & COLEMAN LLP<br>600 Travis Street, Suite 5400<br>Houston, TX 77002<br>jrsimpson@yettercoleman.com<br><br>Harold Watson Gowdy, III<br>TREY GOWDY LAW FIRM LLC<br>P.O. Box 3324<br>Spartanburg, SC 29304<br>trey@treygowdylawfirm.com | William W. Wilkins<br>BILLY WILKINS LAW LLC<br>212 East Park Avenue<br>Greenville, SC 29601<br>BWilkins@nexsenpruet.com<br><br>Andrew A. Mathias<br>Konstantine P. Diamaduros<br>MAYNARD NEXSEN PC<br>104 S. Main Street<br>Greenville, SC 29601<br>AMathias@maynardnexsen.com<br>KDiamaduros@maynardnexsen.com |

This 13th day of August, 2026.

*s/ Beattie B. Ashmore*
BEATTIE B. ASHMORE, #5215
Beattie@BeattieAshmore.com
BEATTIE B. ASHMORE, P.A.
650 E. Washington Street
Greenville, S.C. 29601
T: (864) 467-1001 F: (864) 672-1406